974 So.2d 1223 (2008)
STATE of Louisiana
v.
Leon D. FUSSELL.
No. 2006-K-2595.
Supreme Court of Louisiana.
January 16, 2008.
Rehearing Denied March 7, 2008.
*1224 Charles C. Foti, Jr., Attorney General, J. Reed Walters, District Attorney, Steven Paul Kendrick, Assistant District Attorney, for applicant.
Louisiana Appellate Project, Mark Owen Foster, for respondent.
KIMBALL, Justice.
We granted certiorari in this matter to resolve a split between the circuit courts of appeal regarding the proper interpretation and application of La. R.S. 14:81.1(A)(3),[1] relating to the intentional possession of pornography involving juveniles. For the reasons that follow, we hold that the language of La. R.S. 14:81.1(A)(3) allows a separate count to be charged for each child, in each performance, captured in any photographs, films, videotapes, or other visual reproductions that a defendant intentionally possesses. We therefore find that the Court of Appeal, Third Circuit erred in reducing Defendant's sixteen convictions for intentional possession of child pornography to a single conviction, reverse *1225 that judgment, and reinstate the trial court's convictions.

FACTS AND PROCEDURAL HISTORY
On June 6, 2002, Defendant was indicted by a grand jury on one count of aggravated rape, in violation of La. R.S. 14:42, as well as nineteen counts of intentional possession of pornography involving juveniles, in violation of La. R.S. 14:81.1(A)(3). Seventeen of the nineteen counts of intentional possession of child pornography were for corresponding computer-printed pages, each page containing one or more images, that were found in a closet at Defendant's mother's home (where Defendant lived at the time). The other two counts of intentional possession of child pornography were also for corresponding computer-printed pages, each page containing one or more images, that were found in Defendant's truck at the time of his arrest.[2]
Trial was held in the Twenty-Eighth Judicial District Court, Parish of Lasalle, on November 29 and 30, 2005, after which a jury convicted Defendant of aggravated rape and sixteen of the nineteen pornography charges. Defendant was sentenced to life imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence for the aggravated rape conviction; ten years at hard labor without the benefit of parole, probation, or suspension of sentence for count sixteen of the pornography charges; and two years at hard labor for each of counts four through fifteen and seventeen through nineteen of the pornography charges. All of these sentences were to run consecutively. Additionally, the trial court ordered Defendant to pay restitution for any medical counseling and health expenses that the rape victim and her family might incur.
Defendant appealed his convictions and sentences, offering what constitutes thirty-three assignments of error in one attorney-filed brief and three pro se briefs.[3] On September 27, 2006, after thoroughly addressing each assignment of error, the Third Circuit Court of Appeal affirmed Defendant's conviction for aggravated rape.[4] The court of appeal also held that each of Defendant's sixteen convictions for intentional possession of pornography involving juveniles was supported by at least one photograph showing a "sexual performance involving a child under the age of seventeen," as required by La. R.S. 14:81.1(A)(3).[5] Despite the First Circuit *1226 Court of Appeal's previous finding to the contrary in State v. Kujawa, 05-0470 (La. App. 1 Cir. 2/22/06), 929 So.2d 99, writ denied, 06-0669 (La.10/6/06), 938 So.2d 65, the Third Circuit found the language of La. R.S. 14:81.1(A)(3) "ambiguous as to what constitutes an allowable unit of prosecution[]"[6] for the intentional possession of pornography involving juveniles. State v. Fussell, 06-324, p. 18 (La.App. 3 Cir. 9/27/06), 941 So.2d 109, 125. Resolving this ambiguity in favor of lenity, the Third Circuit thus reduced Defendant's multiple possession of pornography convictions to a single conviction. Finally, though the Third Circuit found each of Defendant's other assignments of error to be without merit, it did find one error patent in the trial court's order for "restitution without specifying the amount of restitution and without specifying on which count or counts the restitution was being imposed."[7]Id., p. 43, at 139.
Because the Third Circuit Court of Appeal reduced Defendant's possession of pornography convictions to a single conviction and found that the trial court's restitution order lacked the requisite specificity, the court of appeal ruled that the case be remanded to the trial court for resentencing with an instruction "to specify the amount of restitution imposed as well as on which count or counts the restitution is imposed." Id.
The State of Louisiana subsequently timely filed the instant application, asserting that the Third Circuit erred in concluding that La. R.S. 14:81.1(A)(3) was impermissibly ambiguous. The State argues that the Third Circuit should have followed the First Circuit's Kujawa analysis, which held that a close reading of the statute reveals a legislative intent to proscribe the possession of any single pornographic image depicting a child and, therefore, that a defendant can be charged with a separate count for each such image. Accordingly, the State urges this Court to overrule the Third Circuit and adopt the First Circuit's analysis and application of La. R.S. 14:81.1(A)(3).
In opposition, Defendant asserts that the Third Circuit was correct in its finding that the First Circuit's Kujawa analysis is flawed. Defendant contends that the language of La. R.S. 14:81.1(A)(3) does not support multiple convictions for what should be considered a single act of possession of pornography involving juveniles. *1227 According to Defendant, the language of La. R.S. 14:81.1(A)(3) was, at best, ambiguously written and, thus, the rule of lenity still demands that his possession of multiple pornographic images be treated as a single offense, subject to a single sentence. Defendant therefore argues that the Third Circuit was correct in reducing his sixteen possession convictions to one and should, in this regard, be affirmed.

"UNIT OF PROSECUTION"
At the outset, we note that the conflicting First and Third Circuit Courts of Appeal decisions that prompted our present inquiry, as well as the briefs filed on behalf of the State and Defendant, describe our task as one to determine the proper "unit of prosecution" under La. R.S. 14:81.1(A)(3). The term "unit of prosecution," however, does not appear in our Criminal Code and is not commonly used in the State of Louisiana. Rather, the term emerged within federal jurisprudence as shorthand for the determination necessary for deciding whether a defendant's conduct "gives rise to multiple convictions or punishments . . ." under an applicable statute. United States v. Reedy, 304 F.3d 358, 365 (5th Cir.2002); see also Bell v. United States, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955) (addressing the "recurring problem" of determining "`[w]hat Congress ha[d] made the allowable unit of prosecution[]' under a statute which does not explicitly give the answer" (citation omitted)). While "unit of prosecution" is not commonly used within this state's jurisprudence, the inquiry that the term identifies  determining how many counts a defendant can be charged with under a criminal statute  is often necessary. See, e.g., State v. Joles, 492 So.2d 490 (La.1986), cert. denied, 479 U.S. 1056, 107 S.Ct. 933, 93 L.Ed.2d 984 (1987) ("At issue in this case is the legality of imposing separate sentences on defendant after convictions of twenty counts (charged separately in a single bill of information) of violating La. R.S. 14:67 by twenty separate acts of theft. . . ." (emphasis added)). Accordingly, to maintain consistency within our jurisprudence, this Court will forego use of the term "unit of prosecution" within this opinion and, instead, focus our discussion on "counts" and "convictions."

LAW AND DISCUSSION
La. R.S. 14:81.1(A), in which La. R.S. 14:81.1(A)(3) appears, proscribes the offense of pornography involving juveniles, which is any of the following:
(1) The photographing, videotaping, filming, or otherwise reproducing visually of any sexual performance involving a child under the age of seventeen.
(2) The solicitation, promotion, or coercion of any child under the age of seventeen for the purpose of photographing, videotaping, filming, or otherwise reproducing visually any sexual performance involving a child under the age of seventeen.
(3) The intentional possession, sale, distribution, or possession with intent to sell or distribute of any photographs, films, videotapes, or other visual reproductions of any sexual performance involving a child under the age of seventeen.

(4) The consent of a parent, legal guardian, or custodian of a child under the age of seventeen for the purpose of photographing, videotaping, filming, or otherwise reproducing visually any sexual performance involving the child.
(Emphasis added).
The issue presented in this case is how La. R.S. 14:81.1(A)(3) should be applied when a defendant intentionally possesses multiple images of pornography involving juveniles. More specifically, we must determine *1228 whether that defendant can be charged with multiple counts for possessing multiple images of child pornography or, rather, whether the defendant should be charged with only one count for a single act of possession of multiple images of child pornography. Presented with this question, the Courts of Appeal, First and Third Circuits, have reached different conclusions.
Conflicting Decisions
In State v. Kujawa, the First Circuit Court of Appeal recently reviewed the imposition of concurrent ten-year sentences for each of fifteen counts of possession of pornography involving juveniles to which a defendant pleaded guilty. 05-0470, p. 3 (La.App. 1 Cir. 2/22/06), 929 So.2d 99, 102, writ denied, 06-0669 (La.10/6/06), 938 So.2d 65. In Kujawa, the defendant had been arrested after a police search of his residence yielded, among other things, "hundreds of pages of printed text and pictures." Id., p. 5, at 103. An assistant professor of pediatrics inspected this material and found that sixty-two of the pages contained pornographic pictures of children. Id. The defendant was then charged with a separate count of intentional possession of pornography involving juveniles under La. R.S. 14:81.1(A)(3) for each of the sixty-two pages, and eventually pleaded guilty to a lesser charge of fifteen separate counts. Id., p. 2, at 101. After being sentenced on each of these counts, the defendant's Motion to Amend Sentence was granted and a resentencing hearing was held. Id., p. 3, at 102. On the date of that hearing, the defendant filed a motion to quash all but one of the charged counts, arguing that since all the pictures were seized on the same date and at the same location, he should have been charged on only one count of possession of pornography involving juveniles and that multiple charges for a single offense constituted double jeopardy. Id. This motion to quash was denied and, after being resentenced, the defendant appealed.
The Kujawa court began its analysis of whether multiple counts can be charged against a defendant under La. R.S. 14:81.1(A)(3) by referencing the statute's language. Particularly, the First Circuit looked to the use of the plural form within La. R.S. 14:81(A)(3) (prohibiting "[t]he intentional possession . . . of any photograph, film, videotapes, or other visual reproductions of any sexual performance involving a child under the age of seventeen" (emphasis added)) and whether this suggested a legislative intent "to prohibit a course of conduct, e.g., the possession of pictures, be it fifteen or fifty, rather than to authorize the multiple charging of a defendant for each separate and distinct picture possessed." Id., p. 8, at 105. The First Circuit analyzed various jurisdictional approaches to this and related questions in order to frame its opinion. Beginning with State v. Freeman, 411 So.2d 1068 (La.1982), the First Circuit noted that this Court, in reviewing the intent evidenced within the language of a statute that prohibited the hunting of "deer" at certain times, has found "that if the legislative aim had been to make the taking of each individual deer an offense, it would have clearly expressed that intent, and to construe the statutory provisions otherwise would permit prosecutors to create multiple offenses without a legislative grant of authority." Kujawa, 05-0470, p. 9, 929 So.2d at 105 (quoting Freeman, 411 So.2d at 1072).
The First Circuit went on to review other approaches to multiple charging under statutes prohibiting child pornography or other similar offenses and found "no clear consensus" on the issue. Id., p. 9-17, at 106-110. Specifically, the Kujawa court noted two cases which disallowed charging *1229 several counts under a single statute without clear language allowing such an approach. In Bell v. United States, the United States Supreme Court held that "if Congress does not fix the punishment for a federal offense clearly and without ambiguity, doubt will be resolved against turning a single transaction into multiple offenses. . . ." 349 U.S. 81, 84, 75 S.Ct. 620, 99 L.Ed. 905 (1955) (reducing two counts of transporting women in interstate commerce for the purpose of prostitution or debauchery, one count for each of two women, to a single count). Similarly, in United States v. Reedy, the United States Fifth Circuit held that the federal statute under which defendants were charged with forty-three counts of transporting child pornography in interstate commerce was ambiguously worded and, thus, the district court had erred in allowing the defendants to be prosecuted on each individual image entered into evidence. 304 F.3d 358, 367-68 (5th Cir.2002).
On the other hand, several other cases analyzed by the First Circuit in Kujawa allowed multiple counts to be charged under child pornography statutes. United States v. Esch allowed sixteen separate counts of sexual exploitation of children to be charged against defendants since the applicable statute proscribed each "use of a minor to engage in sexually explicit conduct for the purpose of creating a visual depiction of such conduct." 832 F.2d 531 (10th Cir.1987) (distinguishing its holding from that in United States v. Meyer, 602 F.Supp. 1480 (S.D.Cal. 1985), since the Esch defendants' actions were not simultaneous). In Vineyard v. Texas, the Texas Court of Criminal Appeals found that the statute under which a defendant had been convicted evidenced a legislative intent that each item of child pornography possessed could be charged separately since the legislature had used the singular term "film image" and since each child depicted was individually harmed. 958 S.W.2d 834, 838 (Tex.Crim. App.1998). The Nebraska Supreme Court's opinion in State v. Mather upheld a defendant's conviction on eighteen counts of generating any visual depiction of sexually explicit conduct involving a child because "[t]he singular form of `photographic representation' covered under the [applicable] statute read in conjunction with the term `any' indicate[ed] that the Legislature intended prosecution for each differing photographic representation." 264 Neb. 182, 646 N.W.2d 605, 610-11 (2002). In State v. Multaler, the Supreme Court of Wisconsin upheld twenty-eight child pornography convictions under Wisconsin's applicable statute after finding that "[t]he singular formulation of the items covered under the[] statute modified by the term `any' [was] evidence that the legislature intended prosecution for each photograph or pictorial reproduction." 2002 WI 35, ¶ 64, 252 Wis.2d 54, ¶ 64, 643 N.W.2d 437, ¶ 64. A later Wisconsin Appellate decision held that eighteen charges of possession of child pornography for images found on a "zip" disk in the defendant's computer were not multiplicitous since each image on the disk represented a new "volitional departure" for purposes of the applicable statute. State v. Schaefer, 2003 WI App 164, ¶ 50, 266 Wis.2d 719, ¶ 50, 668 N.W.2d 760, ¶ 50, review denied, 2003 WI 140, 266 Wis.2d 61, 671 N.W.2d 848. Commonwealth v. Davidson upheld twenty-eight separate convictions for the possession of child pornography since "[e]ach photograph of each child victimized that child and subjected him or her to precisely the type of harm the [applicable] statute seeks to prevent." 2004 Pa.Super. 396, 860 A.2d 575, 583 (2004). Finally, in State v. Howell, a plural listing of materials prohibited under a child pornography *1230 statute was deemed to be "merely a matter of style." 169 N.C.App. 58, 609 S.E.2d 417, 421 (2005). Citing to the Supreme Courts of Utah and South Dakota  states whose respective child pornography statutes also list prohibited materials in the plural  Howell held that North Carolina's legislature intended that the defendant presently before that court "could be charged and convicted on multiple counts for the [forty-three] child pornography images on his computer hard drive." Id.
From this jurisdictional review, the First Circuit determined in Kujawa that the Louisiana legislature's use of the plural form in its list of contraband items within La. R.S. 14:81.1(A)(3) did not prevent a defendant from being convicted on multiple counts under the statute. 05-0470, p. 17 (La.App. 1 Cir. 2/22/06), 929 So.2d 99, 110, writ denied, 06-0669 (La.10/6/06), 938 So.2d 65. Considering La. R.S. 14:81.1 as a whole, with the statute's separate provisions "in their context to each other[,]" the First Circuit found "that the legislative intent was to proscribe possession of any single image [and that t]he use of the plural form was clearly a matter of grammatical style and not suggestive of an intent to establish a unit of prosecution based upon a broad course of conduct involving multiple contraband images."[8]Id., p. 17, at 110-11 (citing La. R.S. 1:3, 1:7 & 14:3) (emphasis added). The First Circuit further found "that the use of the article `any' to modify the proscribed images evidence[d] a clear legislative intent that each such image constitutes a basis for a unit of prosecution." Id., p. 18, at 111 (emphasis added). Accordingly, the First Circuit held that, since this interpretation "best accord[ed] with the unequivocal legislative intent to effectively suppress the particular evil addressed by the statute[,]" fifteen separate counts for fifteen separate images was acceptable, and the trial court did not err in convicting the defendant on each of the fifteen counts. Id.
In the matter presently before us, State v. Fussell, the Third Circuit also began its interpretation of La. R.S. 14:81.1(A)(3) with an analysis of the use of the plural form within the provision's language and whether this suggested a legislative intent to prohibit a course of conduct "rather than to authorize the multiple charging of a defendant for each separate and distinct picture possessed." 06-324, p. 13 (La.App. 3 Cir. 9/27/06), 941 So.2d 109, 120-21. Allowing that "[t]he mere fact that words are in the plural . . . is not dispositive of legislative intent[,]" the Third Circuit analyzed *1231 the language within La. R.S. 14:81.1(A)(3) by revisiting the various jurisdictional approaches that the First Circuit had addressed in its Kujawa opinion. Id., pp. 13-17, at 121-24. While the Third Circuit was "respectful of the majority's opinion in Kujawa, . . ." its reading of these cases left it unable to resolve what it deemed "ambiguous language in La. R.S. 14:81.1." Id., p. 17, at 124. Citing Judge Downing's Kujawa dissent, the Third Circuit noted:
It is not clear from a plain reading of La. R.S. 14:81.1 what constitutes an allowable unit of prosecution. While it is not unreasonable to interpret the plural form of the prohibited items in La. R.S. 14:81.1(A)(3) as suggestive of permitting only one count regardless of the number of pictures possessed, such an interpretation is in no way definitive, or even necessarily preferred. Indeed, a rational argument could be made for either of the conflicting constructions.
State v. Kujawa, 05-0470, p. 1 (La.App. 1 Cir. 2/22/06), 929 So.2d 99, 114, writ denied, 06-0669 (La.10/6/06), 938 So.2d 65 (Downing, J., dissenting) (footnote omitted), quoted in Fussell, 06-324, p. 17, 941 So.2d at 124.
Not sufficiently persuaded by the First Circuit's analysis of the cases it reviewed in its Kujawa opinion, the Third Circuit in this matter determined that, above all else, the use of the plural form within La. R.S. 14:81.1(A)(3) rendered the statute "ambiguous as to what constitutes an allowable unit of prosecution." Fussell, 06-324, p. 18, 941 So.2d at 125. Noting that "[i]t is well established that criminal statutes are to be strictly construed and, in the absence of an express legislative intent, any doubt or ambiguity should be resolved in favor of lenity and not so as to multiply the penalty imposed[,]" State v. Freeman, 411 So.2d 1068, 1072 (La.1982), the Third Circuit resolved this perceived ambiguity in favor of lenity. Fussell, 06-324, p. 18, 941 So.2d at 125. As a result, the Third Circuit held that Defendant's multiple convictions for possession of pornography involving juveniles "should be reduced to a single conviction and the case remanded for resentencing as to that conviction." Id.
Statutory Construction
To resolve the split between the decisions rendered by the First and Third Circuit Courts of Appeal as discussed above and determine what constitutes a count for the purpose of charging a defendant for the intentional possession of multiple items of pornography involving juveniles under La. R.S. 14:81.1(A)(3), we must be mindful of the fact that "the paramount consideration in statutory interpretation is ascertainment of the legislative intent and the reason or reasons which prompted the legislature to enact the law." State v. Johnson, 03-2993, p. 12 (La.10/19/04), 884 So.2d 568, 575; see also State v. Dick, 06-2223, p. 9 (La.1/26/07), 951 So.2d 124, 130. Further, "it is a well-recognized and long-established rule of statutory construction that a statute should be interpreted as a whole to effect the legislative intent and should be construed in such way as to reconcile, if possible, apparent inconsistencies or ambiguities so that each part is given effect." State ex rel. A.M., 98-2752, p. 2 (La.7/2/99), 739 So.2d 188, 190 (emphasis added); see also State v. Cazes, 262 La. 202, 263 So.2d 8, 12 (1972).
As this Court has often noted, "the starting point in the interpretation of any statute is the language of the statute itself." Johnson, 03-2993, p. 11, 884 So.2d at 575; see also Theriot v. Midland Risk Ins. Co., 95-2895, p. 3 (La.5/20/97), 694 So.2d 184, 186. In the realm of criminal statutory interpretation particularly, "provisions are to be given a genuine construction, according to the fair import of [their] *1232 words." State v. Kennedy, 00-1554, p. 4 n. 3 (La.4/3/01), 803 So.2d 916, 928 n. 3 (citing La. R.S. 14:3); see also State ex rel. Robinson v. Blackburn, 367 So.2d 360, 363 (La.1979) (stating that "(1) [a]ll criminal statutes are construed strictly, and (2) the words of a statute must be read in their every day meaning"). If the statute is clear and unambiguous, then it is to be applied as written. State v. Barbier, 98-2923, p. 3 (La.9/8/99), 743 So.2d 1236, 1238.
In this case, we acknowledge that La. R.S. 14:81.1(A)(3), when read alone rather than in its full statutory context, is not a model of statutory clarity. Read in isolation, it is conceivable that one analyzing the language of this particular statutory provision could determine that La. R.S. 14:81.1(A)(3) is susceptible to more than one meaning. As such, by focusing on the legislature's use of the plural form for the provision's list of contraband items, La. R.S. 14:81.1(A)(3) could, as the Third Circuit posited in the instant matter, permit only one count, regardless of the number of pornographic images possessed. Conversely, a reading focused on the word "any," similar to that of the First Circuit in Kujawa, could lead a reader to believe that the provision is aimed at prohibiting the intentional possession of every single image of child pornography and that the legislature's use of the plural form for the list of contraband items was merely a matter of grammatical style.
When the language of a criminal statute is susceptible to more than one meaning, the statute "should be so interpreted as to be in harmony with, preserve, and effectuate the manifest intent of the legislature, and an interpretation should be avoided which would operate to defeat the purpose and object of the statute." State v. Williams, 03-3514, p. 2 (La.12/13/04), 893 So.2d 7, 21; see also State v. Brown, 03-2788, p. 6 (La.7/6/04), 879 So.2d 1276, 1280, reh'g denied, 9/3/04; State v. Broussard, 213 La. 338, 34 So.2d 883, 884 (1948). In targeting their analyses so exclusively on the language of La. R.S. 14:81.1(A)(3), however, the courts of appeal below have focused too narrowly on this provision specifically and have done so at the expense of its full statutory context. As we noted above, "it is a well-recognized and long-established rule of statutory construction that a statute should be interpreted as a whole to effect the legislative intent and should be construed in such way as to reconcile, if possible, apparent inconsistencies or ambiguities so that each part is given effect." State ex rel. A.M., 98-2752, p. 2 (La.7/2/99), 739 So.2d 188, 190 (emphasis added). Accordingly, we now look to the language of La. R.S. 14:81.1 in its entirety to guide our interpretation of the proper application of La. R.S. 14:81.1(A)(3).
La. R.S. 14:81.1, titled "Pornography involving juveniles," appears in Part V, Subpart A(1) of the Louisiana Criminal Code as one of several "Sexual Offenses Affecting Minors,"[9] (emphasis added), and includes seven subsections: (A) through (G). Subsection (A) leads the statute with a list of proscribed offenses. See infra. In subsection (B), several definitions that apply within La. 14:81.1 are provided. See supra, note 5. Subsection (C) states that "[p]ossession of three or more of the same photographs, films, videotapes, or other visual reproductions shall be prima facie evidence of intent to sell or distribute." Subsection (D) provides that "[l]ack of *1233 knowledge of the juvenile's age shall not be a defense." In subsection (E), fines and terms of imprisonment for offenders are listed, as well as provisions for post-imprisonment offender monitoring. Subsection (F) dictates that "[a]ny evidence of pornography involving a child under the age of seventeen shall be contraband [and that s]uch contraband shall be seized in accordance with law and shall be disposed of in accordance with R.S. 46:1845." Lastly, subsection (G) sets forth factors for the trier of fact to determine "whether or not the person displayed or depicted in any photograph, videotape, film, or other video reproduction introduced in evidence was under the age of seventeen years at the time of filming or recording. . . ."
As previously mentioned, four particular offenses relating to pornography involving juveniles are listed in La. R.S. 14:81.1(A):
(1) The photographing, videotaping, filming, or otherwise reproducing visually of any sexual performance involving a child under the age of seventeen.
(2) The solicitation, promotion, or coercion of any child under the age of seventeen for the purpose of photographing, videotaping, filming, or otherwise reproducing visually any sexual performance involving a child under the age of seventeen.
(3) The intentional possession, sale, distribution, or possession with intent to sell or distribute of any photographs, films, videotapes, or other visual reproductions of any sexual performance involving a child under the age of seventeen.
(4) The consent of a parent, legal guardian, or custodian of a child under the age of seventeen for the purpose of photographing, videotaping, filming, or otherwise reproducing visually any sexual performance involving the child.
Our reading of the language of La. R.S. 14:81.1(A) reveals that each of its proscribed offenses is tethered to the visual reproduction of any sexual performance involving a child under the age of seventeen: (1) the "photographing, videotaping, filming, or otherwise reproducing visually" of any sexual performance involving a child; (2) the "solicitation, promotion, or coercion" of a child for the purpose of visually reproducing a sexual performance involving that child; (3) the "intentional possession, sale, distribution, or possession with intent to sell or distribute" any visual reproductions of a sexual performance involving a child; and (4) the "consent of a parent, legal guardian, or custodian" of a child for the purpose of visually reproducing a sexual performance involving that child. La. R.S. 14:81.1(A)(1)-(4). Indeed, without a sexual performance involving a child, none of these offenses could be committed. Inversely, each of these offenses is committed if just one child is involved in one single sexual performance. Thus, read in this context, the language of La. R.S. 14:81.1(A) indicates that each of its prohibitions  La. R.S. 14:81.1(A)(3) included  revolves around a legislative goal to protect any single child from being sexually exploited through the visual reproduction of any single sexual performance involving that child.
Other provisions within La. R.S. 14:81.1 further demonstrate that the legislature was motivated by a "protectionist" goal when drafting its child pornography prohibitions. First, as with Louisiana's other criminal prohibitions against sexual offenses affecting minors,[10] La. R.S. 14:81.1 allows no "lack of knowledge" defense regarding *1234 the age of the child appearing in the pornography. La. R.S. 14:81.1(D). This Court has previously held that the legislature can dispense with knowledge requirements as to the age of a juvenile in certain crimes because juveniles have been "historically recognized as a special class of persons in need of protection. . . ." State v. Granier, 99-3511, p. 4 (La.7/6/00), 765 So.2d 998, 1000 (holding that subsection B of La. R.S. 14:80, carnal knowledge of a juvenile, is constitutional). The legislature's prohibition of a "lack of knowledge" defense in La. 14:81.1(D) evidences such a recognition in drafting La. R.S. 14:81.1, since "[a]t the heart of these types of statutes is the concern that juveniles should not be exploited for sexual purposes regardless of their `consent.'" Granier, 99-3511, p. 6, 765 So.2d at 1001.
Additionally, in an effort to prevent any further victimization of a child that has been forced or coerced into sexually performing (e.g., the knowledge that the abuse depicted in the child pornography might be seen by others for years to come), La. R.S. 14:81.1 deems any evidence of the pornographic product of that performance contraband and provides for its seizure and prompt disposal. See La. R.S. 14:81.1(F). Moreover, La. R.S. 14:81.1(G) is singularly focused on the child victim when it provides factors for the trier of fact to determine "whether or not the person displayed or depicted in any photograph, videotape, film, or other video reproduction introduced in evidence was under the age of seventeen years at the time of filming or recording. . . ." (Emphasis added). The language of this statutory provision necessitates this age determination for each person depicted in any of the listed reproductions, regardless of the number of persons actually depicted, again indicating that La. R.S. 14:81.1 is focused on protecting any single child from being victimized by the pornography crimes proscribed within this statute.
Finally, La. R.S. 14:81.1 provides no distinctions between types of offenders: whether a producer or a consumer of child pornography, each offender is to be punished equally under La. R.S. 14:81.1(E)(1) with fines of up to ten thousand dollars and "imprisonment at hard labor for not less than two years or more than ten years, without benefit of parole, probation, or suspension of sentence." The focus on protecting each individual child within this equal punishment approach is further evidenced by the legislature's intention to provide harsher sentences for those that prey upon the youngest, and thus most vulnerable, children: La. R.S. 14:81.1(E)(2) provides that if the child appearing in the pornography is "under the age of thirteen years when the offender is seventeen years of age or older," the offender faces "imprisonment at hard labor for not less than twenty-five years nor more than life imprisonment [with a]t least twenty-five years of the sentence imposed [to] be served without benefit of parole, probation, or suspension of sentence." Accordingly, an offender that is seventeen years of age or older that is found to be in possession of child pornography depicting a sexual performance that involves, for instance, both a twelve-year-old child and a sixteen-year-old child must be subject to different punishments for each child in that sexual performance; the language of the statute does not allow the same sentence to be imposed for both children. Lastly, the statute also seeks to protect children from further victimization by dealing with the dangers of recidivism: if and when an offender is released, that offender "shall be monitored . . . through the use of electronic monitoring equipment for the remainder of his natural life." La. R.S. 14:81.1(E)(3).
*1235 Read in this full statutory context, we find that the legislature enumerated punishable offenses related to pornography involving juveniles within La. R.S. 14:81.1(A), and La. R.S. 14:81.1(A)(3) specifically, with the goal of preventing any single child from being sexually exploited through the visual reproduction of any single sexual performance involving that child. Cf. State v. Granier, 99-3511, p. 6 (La.7/6/00), 765 So.2d 998, 1001 (stating that "[a]t the heart of these types of statutes is the concern that juveniles should not be exploited for sexual purposes . . ."). Accordingly, the lower courts have focused their analyses too specifically on the use of the plural form in the list of contraband items in La. R.S. 14:81.1(A)(3). Any ambiguity that this use creates is clarified when La. R.S. 14:81.1 is interpreted in its entirety "in such way as to reconcile . . . apparent inconsistencies or ambiguities so that each part [of the statute] is given effect." State ex rel. A.M., 98-2752, p. 2 (La.7/2/99), 739 So.2d 188, 190. Through its enactment of La. R.S. 14:81.1, the legislature intended to prevent any child from ever being victimized by punishing equally any of four types of offenders for each action that contributes to that child's sexual exploitation, including a defendant who intentionally possesses child pornography. Simply stated, preventing any child from being sexually victimized is the end to be achieved, and punishing both producers and consumers of child pornography equally is the legislature's chosen means by which to achieve this end. Thus, in the instant matter, we hold that the language of La. R.S. 14:81.1(A)(3) evidences a legislative intent to allow a separate conviction on a separate count for each child, in each sexual performance in which that child is victimized, that is captured in any photographs, films, videotapes, or other visual reproductions that a defendant intentionally possesses.
The legislative history behind La. R.S. 14:81.1, as well as the historical context in which this legislation was proposed, buttresses our reading and application of this statute's language. See Exxon Pipeline Co. v. Louisiana Public Serv. Comm'n, 98-1737, p. 8 (La.3/2/99), 728 So.2d 855, 860 (stating that "[i]n many cases, the legislative history of an act and contemporaneous circumstances may be helpful guides in ascertaining legislative intent"). Historically speaking, La. R.S. 14:81.1 was unanimously passed into law by Acts 1977, No. 97, § 1 in 1977, a time in which the commercial exploitation of child pornography had exploded and a national movement directed at curbing that market had emerged. See Sexual Exploitation of Children, Hearings Before the Subcommittee on Crime of the House Committee of the Judiciary and the Subcommittee on Select Education of the House Committee of Education and Labor, 95th Cong., 1st Sess. 16 (1977); The Supreme Court, 1981 Term  Child Pornography and Unprotected Speech, 96 Harv. L.Rev. 141, 141 n. 2 (1981) (stating that "[i]n 1977, press coverage of the emergence of a nationwide, multimillion dollar child pornography market became a catalyst for state and federal legislative action"). In an effort to address this expanding problem and to prevent children from being harmed by these materials, the federal government passed the Protection of Children Against Sexual Exploitation Act of 1977, Pub.L. No. 95-225, 92 Stat. 7 (1978) (making it a crime for a person to distribute for sale certain materials depicting minors engaging in sexually explicit conduct), as many states also adopted their own such child pornography laws. See, e.g., Ariz.Rev.Stat. Ann. § 13-538 (1977); Fla. Stat. § 847.014 (1977); Ill. Comp. Stat. Ch. 38, § 11-20a (1978); Minn.Stat. § 617.246 (1977); N.H.Rev.Stat. Ann. § 650.2 (1977). Indeed, *1236 La. R.S. 14:81.1 was enacted at a time in which there had emerged a strong national consensus that child pornography, in and of itself, was a particular type of child sexual abuse. See, e.g., New York v. Ferber, 458 U.S. 747, 759, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982). This consensus was subsequently recognized by the United States Supreme Court when it refused to extend First Amendment free speech protection to child pornography and upheld a state prohibition on such materials that did not first require a finding that those materials were "obscene." Id. In Ferber, the Court found that, in some ways, child pornography was worse than direct acts of sexual abuse because "the materials produced are a permanent record of the children's participation and the harm to the child is exacerbated by their circulation." Id.
Following Ferber, the Louisiana Legislature promptly proposed amending La. R.S. 14:81.1 to separate the statute from Louisiana's obscenity laws. See S.B. 116, 1983 Reg. Sess. (La.1983), as enacted in Acts 1986, No. 655, § 1. Noting that "[t]he new Supreme Court ruling eliminated the confinements relating to obscenity definitions contained in previous legislation concerning child pornography[,]" the committee meeting minutes that accompanied this amendment suggest a legislative intent to define the offenses under La. R.S. 14:81.1 as broadly as possible within constitutional constraints. Louisiana State Senate Committee on Judiciary B, Minutes of Meeting, April 26, 1983, p. 2 (emphasis added). This legislative intent to define proscribed conduct broadly within La. R.S. 14:81.1 was further evidenced when the depictions prohibited under the law were expanded from those showing "any act of sexual conduct" to those showing "any act of sexual conduct or the obscene, lewd, or lascivious exhibition of the genitals or pubic area." See H.B. 720, 1981 Reg. Sess. (La.1981), as enacted in Acts 1981, No. 502, § 1. The committee minutes for this amendment further indicate that its purpose was to "tighten a loophole in the law which allow[ed] juveniles to be photographed in an obscene manner as long as no sexual conduct is included." Louisiana State Senate Committee on Judiciary C, Minutes of Meeting, July 7, 1981, p. 1 (emphasis added).[11] Indeed, in holding La. R.S. 14:81.1 constitutional, this Court has reviewed the language and history of this statute previously and found that "[t]he apparent legislative intent . . . was to regulate child pornography to the fullest extent possible[.]" State v. Cinel, 94-0942, p. 12 (La.11/30/94); 646 So.2d 309, 317.
As previously noted, "the paramount consideration in interpreting a statute is ascertaining the legislature's intent and the reasons that prompted the legislature to enact the law." State ex rel. A.M., 98-2752, p. 2 (La.7/2/99), 739 So.2d 188, 190. Accordingly, the above legislative actions, taken during a time of intense national concern for preventing the victimization of children in child pornography, further support our reading of La. R.S. 14:81.1 as a statute that aims to criminalize four categories of offenses for the purpose of preventing any single child from being sexually exploited through the visual reproduction *1237 of any single sexual performance involving that child. In this regard, we find that the Third Circuit erred when it failed to analyze these offenses, listed in La. R.S. 14:81.1(A), in their full statutory context, focusing instead too narrowly on La. R.S. 14:81.1(A)(3) and stating that:
The central object of the statute does not relate to the terms "a child" or "any child," but rather to the possession of items containing child pornography. The proper focus, thus, is on the legislative intent in designating prohibited items using the plural form. The unit of prosecution refers to the offense proscribed by the statute, not the class of persons the statute protects.
State v. Fussell, 06-324, p. 15 (La.App. 3 Cir. 9/27/06), 941 So.2d 109, 123.
We are cognizant that the count or counts charged against a defendant (referred to above by the Third Circuit as the "unit of prosecution") must indeed connect to the offense proscribed by the statute. The offenses that La. R.S. 14:81.1(A) proscribes, however, each revolve around the sexual exploitation of a child through, inter alia, preparing for, creating, or possessing any visual reproduction of a sexual performance involving that child. The language of the statute reveals that, to achieve its goal of preventing any single child from being sexually exploited through the visual reproduction of any single sexual performance involving that child, our legislature crafted a law that punishes all pornographers equally. Regardless of the stage at which the pornographer participates in the sexual exploitation of a child, the person that coerces a child into performing sexually for a video or other visual reproduction, the person that actively captures that visual reproduction, and the person that later possesses that visual reproduction will all face the same sentence (a sentence that will be even harsher should the child victim be under thirteen years of age). See La. R.S. 14:81(A) & (E). To treat the intentional possession of child pornography, as proscribed by La. R.S. 14:81.1(A)(3), differently from the other offenses listed within La. R.S. 14:81.1(A) and allow instead a "course of conduct" punishment for the possession of multiple images of child pornography would be to allow a defendant to be punished only once, regardless of how many children have been exploited within the contraband material possessed by a defendant, and regardless of how many times each child has been exploited. In our view, such an approach is not consistent with the language and purpose of La. R.S. 14:81.1, read in its entirety.
Thus, while the Third Circuit was correct in pointing out that any doubt or ambiguity within a criminal statute should be resolved in favor of lenity, Fussell, 06-324, p. 18, 941 So.2d at 125 (citing State v. Freeman, 411 So.2d 1068, 1072 (La.1982)), in this situation, we find no ambiguity within La. R.S. 14:81.1 that demands such a resolution. Cf. 1 Wharton's Criminal Law, 74-76 (Charles E. Torcia, ed., 15th ed.1993) (stating that "it is for the court to carry out the apparent intent of the legislature, and, if the meaning of a statute is clear, the legislative intent as thus manifested is controlling even though the statute might admit of a narrower interpretation" (footnotes omitted)). With the above legislative context as further support, the language of La. R.S. 14:81.1(A), when read in its entirety, clearly indicates that an individual offense is committed each time one visually reproduces any sexual performance involving a child; coerces or solicits a child into any visually reproduced sexual performance; consents as a parent, guardian, or custodian to a child's visually reproduced sexual performance; or, for purposes of the instant inquiry, intentionally possesses any single visual reproduction of a child's sexual *1238 performance. Thus, a photographer can be charged on a separate count for each performance he/she photographs, as well as each child he/she photographs in that performance, regardless of the particular number of images eventually produced. One filming or videotaping can also be charged on a separate count for each performance he/she captures on film or tape, as well as each child he/she films or videotapes in that performance, regardless of the number of films or videos eventually produced. And, as applicable here, under La. R.S. 14:81.1(A)(3), we conclude that one who intentionally possesses child pornography can be charged on a separate count, and sentenced separately for each count upon which he or she is convicted, for each child in each sexual performance captured within photographs, films, videotapes, and/or other visual reproductions that comprise the defendant's collection of child pornography.
Since Defendant in the instant matter possessed at least sixteen computer-printed photographs of a different child in a different sexual performance,[12] we hold that the Third Circuit Court of Appeal improperly reduced Defendant's sixteen convictions for the intentional possession of pornography involving juveniles to a single conviction. We thus reverse that reduction and reinstate the trial court's sixteen convictions.

RESTITUTION
We agree with the Third Circuit Court of Appeal that, due to a nonspecific restitution order, the sentences imposed upon Defendant by the trial court were indeterminate and, thus, invalid. See La C.Cr.P. art. 879 (stating that "[i]f a defendant who has been convicted of an offense is sentenced to imprisonment, the court shall impose a determinate sentence"); La. C.Cr.P. art. 883.2.[13] Accordingly, this case must now be remanded for resentencing on all convicted counts.

DECREE
Based on the foregoing, we now determine the following: (1) The Court of Appeal's reduction of Defendant's sixteen convictions under La. R.S. 14:81.1(A)(3) for the intentional possession of pornography involving juveniles to a single conviction is reversed and the trial court's sixteen separate convictions are reinstated; and (2) the case is remanded to the trial court for resentencing on all seventeen convictions.
REVERSED IN PART AND REINSTATED, AND REMANDED FOR RESENTENCING.
CALOGERO, C.J., and TRAYLOR, J., concur.
NOTES
[1] La. R.S. 14:81.1(A)(3) proscribes "[t]he intentional possession, sale, distribution, or possession with intent to sell or distribute any photographs, films, videotapes, or other visual reproductions of any sexual performance involving a child under the age of seventeen."
[2] Each of these nineteen pages was later introduced at trial as a separate State exhibit.
[3] Defendant raised numerous claims in his three pro se briefs, many of which the Third Circuit determined were duplicitous, and some of which the Third Circuit determined were extremely difficult to follow. State v. Fussell, 06-324, p. 25 (La.App. 3 Cir. 9/27/06), 941 So.2d 109, 129. Though these claims were not designated by Defendant as assignments of error, the Third Circuit treated them as such, "combining related claims into single assignments." Id.
[4] This Court granted the State's writ application to determine the proper interpretation and application of La. R.S. 14:81.1(A)(3). Accordingly, the affirmed aggravated rape conviction will not be addressed in this opinion.
[5] La. R.S. 14:81.1(B)(1) defines a "sexual performance" as "any performance or part thereof that includes sexual conduct involving a child under the age of seventeen." "Performance" is defined in La. R.S. 14:81.1(B)(2) as "any play, motion picture, photograph, dance, or other visual representation." Lastly, La. R.S. 14:81.1(B)(3) defines "sexual conduct" as "actual or simulated sexual intercourse, deviate sexual intercourse, sexual bestiality, masturbation, sadomasochistic abuse, or lewd exhibition of the genitals." In its opinion, the Third Circuit in this matter noted how each of the sixteen convictions was supported by a corresponding State exhibit (see supra, note 2 and accompanying text):

S-5, S-6, S-7, S-8, S-9, S-10, S-11, S-12, S-13, S-14, and S-15 all contain[ed] at least one photograph of an act of either oral, vaginal or anal sexual intercourse. S-16 contain[ed] at least one photograph of sadomasochistic abuse and S-17 show[ed] an act of sexual bestiality. S-18 show[ed] a young couple involved in an act of sexual intercourse, either actual or simulated[,] . . . and S-20 and S-21 clearly contain[ed] photographs meeting the definition of "lewd exhibition of the genitals". . . .
State v. Fussell, 06-324, pp. 8-11, 941 So.2d at 117-19.
[6] For a discussion regarding the term "unit of prosecution," see infra, "Unit of Prosecution" section, page 1227.
[7] Restitution as part of a principal sentence is imposed pursuant to La.C.Cr.P. art. 883.2, which provides:

In all cases in which the court finds an actual pecuniary loss to a victim, or in any case where the court finds that costs have been incurred by the victim in connection with a criminal prosecution, the trial court shall order the defendant to provide restitution to the victim as a part of any sentence that the court shall impose.
The Third Circuit has previously held that a failure to state the amount of restitution and to specify on which count or counts the restitution is ordered "renders a sentence indeterminate and thus illegal, necessitating that the sentence be vacated and the case remanded for resentencing." State v. Joseph, 05-186, p. 3 (La.App. 3 Cir. 11/2/05), 916 So.2d 378, 380.
[8] To support its conclusion that La. R.S. 14:81.1(A)(3) sought to prohibit the possession of any single image of child pornography, the First Circuit looked to three other particular provisions within La. R.S. 14:81.1, as they were written at the time of the defendant's arrest, and noted the following:

[P]aragraph C of La. R.S. 14:81.1 provides:
Possession of three or more of the same photographs, films, videotapes, or other visual reproductions shall be prima facie evidence of intent to sell or distribute.
It can hardly be considered reasonable in this context to interpret the phrase "the same photographs, films, videotapes, or other visual representations" as referring to identical sets of multiple images, as opposed to the same image, in order for the presumption to apply. This conclusion is reinforced by consideration of the specific language of paragraph F:
Each photograph, film, videotape, or other reproduction of any sexual conduct involving a child under the age of seventeen shall be contraband and shall be seized and disposed of in accordance with law. (Emphasis supplied.)
Further, the use of the singular form of the contraband images in La. R.S. 14:81.1(G), although not as persuasive, supports this conclusion.
State v. Kujawa, 05-0470, p. 17-18, 929 So.2d at 111 (footnote omitted).
[9] Other sexual offenses affecting minors include felony and misdemeanor carnal knowledge of a juvenile, La. R.S. 14:81 & 14:80.1, indecent behavior with juveniles, La. R.S. 14:81, molestation of a juvenile, La. R.S. 14:81.2, and computer-aided solicitation for sexual purposes. La. R.S. 14:81.3.
[10] Lack of knowledge of a juvenile's age is not a defense for any of the offenses listed in Part V, Subpart A(1) of Louisiana's Criminal Code. See supra, note 9.
[11] La. R.S. 14:81.1 was subsequently restructured to prohibit depictions of "any sexual performance," which was separately defined as containing "sexual conduct." See La. R.S. 14:81.1(A) & (B)(1)-(3). In its restructuring, however, the legislature retained, and further expanded, this broader definition of prohibited depictions, including in its list of "sexual conduct" any "actual or simulated sexual intercourse, deviate sexual intercourse, sexual bestiality, masturbation, sadomasochistic abuse, or lewd exhibition of the genitals." La. R.S. 14:81.1(B)(3).
[12] See supra, notes 2 & 5 and accompanying text.
[13] La.C.Cr.P. art. 883.2 provides:

In all cases in which the court finds an actual pecuniary loss to a victim, or in any case where the court finds that costs have been incurred by the victim in connection with a criminal prosecution, the trial court shall order the defendant to provide restitution to the victim as a part of any sentence that the court shall impose.