74 So.3d 197 (2011)
STATE of Louisiana
v.
Todd Andrew JONES.
No. 2010-K-0762.
Supreme Court of Louisiana.
September 7, 2011.
*198 James D. Caldwell, Attorney General, James C. Downs, District Attorney, Michael W. Shannon, Assistant District Attorney, for Applicant.
Edward Kelly Bauman, Lakes Charles, LA, for Respondent.
VICTORY, J.
The adult male defendant in this case made a graphic sexual request of a teenage boy. The issue before us is whether defendant's conduct is sufficient to constitute attempted indecent behavior with a juvenile. After reviewing the record and the applicable law, we find that, in the specific context of this crime, the request is an act committed "for the purpose of and tending directly toward the accomplishing of his object" such that the attempt statute, La. R.S. 14:27, is satisfied. Therefore, we reverse the judgment of the *199 court of appeal and reinstate the jury verdict finding defendant guilty of attempted indecent behavior with a juvenile in violation of La. R.S. 14:81(A)(1).

FACTS AND PROCEDURAL HISTORY
On August 30, 2007, the defendant, Todd Andrew Jones, the Assistant Chief of Police for the Town of LeCompte, was charged with two counts of forcible rape in violation of La. R.S. 14:42.1, and one count of indecent behavior with a juvenile in violation of La. R.S. 14:81 A(1). Counts One and Two alleged that defendant committed forcible rape upon M.L., a 15-year-old black male, on December 19, 2005 and January 17, 2006, and Count Three alleged that defendant committed indecent behavior with a 15-year-old black male, J.D., on February 20, 2007. All three counts were tried together on March 17, 2009.
At trial, M.L. testified that defendant picked him up in his vehicle, drove him a short distance out of Alexandria, and forcibly raped him, both orally and anally. In support of this claim relative to Counts 1 and 2, E.L., who was nineteen at the time of trial, testified that when he was fifteen, he was involved in a romantic relationship with defendant and engaged in sexual relations with him. E.L. also had defendant's name tattooed on his shoulder.
Relative to Count 3, J.D. testified that late in the evening on February 20, 2007, he was visiting his girlfriend, L.S., at her home in Alexandria. Defendant and L.S.'s uncle, Jerry Whatley, were sitting together in a bedroom of the home. Whatley is a transvestite who goes by the name of "Jaleesa." When J.D. came into the room, Whatley/Jaleesa asked J.D. to close the door and sit down on the bed. Whatley/Jaleesa then asked J.D. to show his hair, which J.D. and defendant both understood to mean his pubic hair, and J.D. refused and left the room. Sometime later, J.D. came back into the bedroom and asked defendant for a ride to the store, to which defendant replied "you can't get something for nothing." According to J.D., when he asked what defendant meant by that comment, defendant told J.D. he should put his penis in defendant's mouth. J.D. became offended, left the room, and told L.S.'s mother what defendant had said. She told him to call his own mother, which he did, the police were summoned and defendant was taken into custody.
Defendant gave a written statement, which was admitted into evidence, as follows:
I, Todd Jones went to visit Jaleesa at his residence and was sitting in his bedroom with the door open and the family was about throughout the home. [J.D.] was in and out of the room we were in and Jaleesa stopped him and told him to sit down or lay down on the bed. He told him to close the door behind him and come back and sit on the bed, [J.D.] did and again Jaleesa asked to see some hair. [J.D.] asked what for, there was no response, joking conversation exchanged with [J.D.] speaking of his penis and I stated I just wanted to see. He [J.D.] asked what you gonna do wit it if I show U [sic], I stated maybe put it in my face somewhere, and we all laughed and he walked out of the room. [J.D.] came back in and out several times, and he was talking and joking.
At trial, defendant testified that he made the statement to J.D. in a joking manner, that he did not get sexually aroused by making the statement, and it was not his intent to get J.D. sexually aroused. He testified that he had engaged with J.D. in "trash talk" before, but that he knew it was improper for an adult to ask a fifteen year old for oral sex. He *200 further testified that he was bisexual. Finally, he denied the allegations of rape relative to M.L. and the defense was able to point out inconsistencies in M.L.'s account of events leading to those charges.
The jury returned a verdict of not guilty on both counts of forcible rape. As to the count of indecent behavior with a juvenile, the jury returned a guilty verdict on the lesser included offense of attempted indecent behavior with a juvenile. The Third Circuit reversed, finding no evidence that defendant had committed any overt act towards J.D. which would constitute an attempt. State v. Jones, 09-937 (La.App. 3 Cir. 3/10/10), 32 So.3d 1084. We granted the State's writ application to determine whether defendant's statement to J.D. constituted an attempt to commit indecent behavior with a juvenile. State v. Jones, 10-762 (La.2/4/11), 56 So.3d 982.

DISCUSSION
When a defendant challenges a conviction for insufficiency of the evidence, we must determine whether "the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Young, 00-1437 (La.11/28/01), 800 So.2d 847, 851.
At the time of the alleged offense, La. R.S. 14:81(A) defined "indecent behavior with a juvenile" as follows:
A. Indecent behavior with juveniles is the commission of any of the following acts with the intention of arousing or gratifying the sexual desires of either person:
(1) Any lewd or lascivious act[1] upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons. Lack of knowledge of the child's age shall not be a defense; or
(2) The transmission of an electronic textual communication or an electronic visual communication depicting lewd or lascivious conduct, text, or images to any person reasonably believed to be under the age of seventeen and reasonably believed to be at least two years younger than the offender. It shall not be a defense that the person who actually receives the transmission is not under the age of seventeen.[2]
The definition of criminal attempt is found in La. R.S. 14:27:
Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.

*201 Mere preparation to commit a crime shall not be sufficient to constitute an attempt; but lying in wait with a dangerous weapon with the intent to commit a crime, or searching for the intended victim with a dangerous weapon with the intent to commit a crime, shall be sufficient to constitute an attempt to commit the offense intended.
In interpreting these statutes to determine whether defendant's actions constitute an attempt, "it is a well-recognized and long-established rule of statutory construction that a statute should be interpreted as a whole to effect the legislative intent and should be construed in such way to reconcile, if possible, apparent inconsistencies of ambiguities so that each part is given effect." State v. Fussell, 06-2595 (La.1/16/08), 974 So.2d 1223, 1231 (citing State ex rel. A.M., 98-2752 (La.7/2/99), 739 So.2d 188, 190). Further, we have interpreted statutes dealing with sex crimes against children in light of the legislature's "protectionist" goal when drafting these statutes considering that "juveniles have been `historically recognized as a special class of persons in need of protection. . .'" Fussell, supra at 1234 (citing State v. Granier, 99-3511 (La.7/6/00), 765 So.2d 998, 100). In enacting La. R.S. 14:81(A), the legislature intended the statute "to apply to behavior which falls short of intercourse [when] carried on with young children." State v. Interiano, supra at 15 (citing 1942 La. Acts 43 § 81 (Official Comment)). We have held that "the legislative history shows a compelling state interest in protecting children from the physical and psychological harm that can result from sexual acts committed `upon the person' of the child and the psychological impact that having such acts committed in their presence may cause." Id. at 15-16.
Defendant was convicted of attempt to violate La. R.S. 14:81(A)(1). Thus, the specific question here is whether the defendant's conduct of asking the victim to put his penis in defendant's mouth constitutes an attempt to commit a lewd and lascivious act upon the victim or in the presence of the victim.
To constitute an attempt, the State must first prove specific intent. "Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La. R.S. 14:10(1); State v. Ordodi, 06-0207 (La.11/29/06), 946 So.2d 654, 661. Specific intent may be inferred from the circumstances surrounding the offense and the conduct of the defendant. Ordodi, supra at 661; State v. Weary, 03-3067 (La.4/24/06), 931 So.2d 297, 310, cert. denied, 549 U.S. 1062, 127 S.Ct. 682, 166 L.Ed.2d 531 (2006). The determination of whether specific intent exists is a fact question for the jury. Ordodi, supra at 661; State v. Legrand, 02-1462 (La.12/3/03), 864 So.2d 89, 96, cert. denied, 544 U.S. 947, 125 S.Ct. 1692, 161 L.Ed.2d 523 (2005).
While defendant testified that he made the request in jest and had no intent to arouse the victim or himself, clearly the jury rejected this testimony. In addition to defendant's testimony, the jury also heard evidence that defendant was bisexual, that other teenage boys had alleged sexual misconduct by defendant, and that defendant made the statement while in the presence of a male transvestite who also made sexually suggestive and crudely inappropriate comments to the teenage victim. Considering this evidence in the light most favorable to the prosecution, we find that a rational trier of fact could find the State proved beyond a reasonable doubt *202 that defendant had the requisite specific intent to commit a lewd and lascivious act upon the teenage victim.
The State must also prove defendant committed or omitted "`an act for the purpose of and tending directly toward the accomplishing of his object,' sometimes referred to as an `overt act.'" Ordodi, supra at 661. In Ordodi, we explained that the attempt statute makes a distinction between actions which are "mere preparation" and are not sufficient to constitute attempt, and acts which are committed for the purpose of and tending directly toward the accomplishing of the criminal object. Id. at 662. However, we noted that the distinction is not clearly defined and that actions which are mere preparation and those which constitute an overt act "exist on a continuum." Id. Where a defendant's actions fall on the continuum is a fact question for the trier of fact and is determined by evaluating the "the totality of the facts and circumstances presented by each case." Id. (Citing State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442, 444; State v. Williams, 490 So.2d 255, 261 (La. 1986), cert. denied, 483 U.S. 1033, 107 S.Ct. 3277, 97 L.Ed.2d 780 (1987)). The overt act need not be the ultimate step toward or the last possible act in the consummation of the crime attempted, and it is the intent to commit the crime, not the possibility of success, that determines whether the act or omission constitutes the crime of attempt. Smith, supra at 445. Further, a person may be found guilty of attempt as a responsive verdict even though the evidence shows he committed the actual crime charged. State v. Credeur, 328 So.2d 59, 61 (La.1976).
For the following reasons, we find that a rational trier of fact could have found beyond a reasonable doubt that defendant's conduct constitutes attempt to commit indecent behavior with a juvenile. While a physical overt act is generally required to constitute an attempt for most crimes, that is not necessarily so in the context of La. R.S. 14:81(A). Significantly, the completed crime of indecent behavior with a juvenile is accomplished by the mere "transmission of an electronic textual communication or an electronic visual communication depicting lewd or lascivious conduct, text, or images to any person" reasonably believed to be under seventeen and at least two years younger than the offender. La. R.S. 14:81(A)(2). So, if defendant had texted his request to the juvenile in this case rather than stated his request right in front of him, he would have been guilty of the completed crime of indecent behavior with a juvenile. It would be an absurd construction of this statute to find that a defendant could be guilty of the completed crime if done over the internet or electronically, but would not even be guilty of attempt if he committed same exact act in the physical presence of the victim, where the juvenile is actually more vulnerable.
Second, as stated in Ordodi, the distinction between mere preparation and an overt act is not clear and it is up to the fact finder to determine where a defendant's actions fall on the continuum by examining the totality of the facts and circumstances. In light of the atmosphere surrounding defendant's request, and his specific intent to carry out this act had the victim acquiesced, it was not necessary for defendant to use force or commit any other acts in furtherance of the crime short of committing the actual crime itself. Whether defendant successfully committed the underlying crime depended on the actions of the victim, i.e., if the victim had acquiesced defendant would have been guilty of indecent behavior with a juvenile. As we stated in Smith, an attempt was complete when "the nature of the act requested *203 by defendant required compliance by [the victim], not action by the defendant." 661 So.2d at 444. In making the factual determination of where defendant's actions fell on the continuum between mere preparation and an overt act, the jury found that the defendant had committed actions sufficient to constitute an attempt. In reviewing the evidence and the totality of the facts and circumstances, we find that a rational jury could find beyond a reasonable doubt that defendant committed an act for the purpose of and tending directly toward the accomplishing of indecent behavior with a juvenile.
Third, attempt in the context of La. R.S. 14:81 must be viewed in light of the legislative intent of protecting children from sexual exploitation as a special class of persons needing extra protection. By making it a crime to electronically transmit a lewd or lascivious message to a person reasonably believed to be a juvenile with the intent of arousing or gratifying the sexual desires of the perpetrator or the juvenile, the legislature has expressed its intent to punish conduct that involves no more than a communication. Punishing a request for oral sex with a juvenile in this case as an attempt to commit a lewd or lascivious act is consistent with the legislature's "protectionist goal" with regard to juveniles. Further, reading La. R.S. 14:81(A)(1) in light of La. R.S. 14:81(A)(2) to reach this result is consistent with our mandate to interpret statutes "as a whole to effect the legislative intent" and to construe the statute "in such way as to reconcile . . . apparent inconsistencies or ambiguities so that each part is given effect." Fussell, supra at 1231.
Fourth, this interpretation would be consistent with our opinion in Smith, supra, where the defendant lay down on the bed and asked his child to "sit on his chest so he could suck [the boy's] penis," and this Court found this constituted attempt to commit indecent behavior with a juvenile. Here, the juvenile came into the bedroom where defendant was located, asked defendant for a ride to the store, and defendant told him he would do it if the juvenile put his penis in defendant's mouth. There is no rational basis to find one of these requests to be attempted indecent behavior with a juvenile and the not the other. It is true that the request in Smith was made by the father of victim and the victim was younger than the victim in this case, which created an atmosphere whereby the child was subject to the authority of his father and not necessarily free to leave. However, here, the defendant was the Assistant Chief of Police of LeCompte, also an authoritative figure, and the request was made in the bedroom of a transvestite who was present and who also made lewd requests of the victim.
Finally, this case can be distinguished from State v. Baxley, 93-2159 (La.2/28/94), 633 So.2d 142, 155, where this Court held that a verbal request for oral sex did not constitute an attempt to commit a crime against nature in violation of La. R.S. 14:89(A)(2). At that time, La. R.S. 14:89(A)(2) made it a crime to solicit a person with the intent to engage in any unnatural carnal copulation for money. In Baxley, the defendant approached an undercover police officer and offered to pay the officer $20.00 if he would allow the defendant to perform fellatio on him. The defendant argued that La. R.S. 14:89(A) was unconstitutional in its entirety and that he had standing to challenge its constitutionality because, even though no money changed hands, he could be found guilty of attempted crime against nature in violation of La. R.S. 14:89(A)(1) if the court found he merely discussed uncompensated oral sex with the undercover officer. La. R.S. 14:89(A)(1). At that time, La. R.S. 14:89(A)(1) made unnatural carnal copulation *204 a crime against nature. This Court disagreed, finding that "mere discussion or solicitation without a financial aspect cannot constitute an attempt to engage in conduct prohibited by La. R.S. 14:89(A)(1)." 633 So.2d at 145. Baxley is distinguishable because it is based on attempt under La. R.S. 14:89, not 14:81. La. R.S. 14:81 is directed at the victimization of juveniles, whereas La. R.S. 14:89 deals with adults. Further, as stated earlier, this Court has defined "lewd and lascivious conduct" very broadly as any conduct which is "lustful, obscene, indecent, tending to deprave the morals in respect to sexual relations, and relating to the sexual impurity or incontinence carried on in a wanton manner." See page 4, note 1, supra. Finally, La. R.S. 14:81 can be violated by a mere communication, whereas La. R.S. 14:89 cannot.

CONCLUSION
Reviewing the evidence in the light most favorable to the prosecution, we find that a rational jury could find beyond a reasonable doubt that defendant had the specific intent to commit a lewd and lascivious act upon the juvenile victim and committed an act for the purpose of and tending directly toward the accomplishing of this act. Where the defendant's act fell upon the continuum between mere preparation and an overt act was a question of fact for the trier of fact to be determined by evaluating the totality of the facts and circumstances of this particular case. Defendant was the Assistant Chief of Police, and made this sexual request to the teenage victim in the bedroom of and in the presence of a known transvestite who also made lurid sexual comments to the victim. If the victim had acquiesced in this intimidating environment, the crime would have completed. While most other crimes require an overt physical act in order for an attempt to occur, the completed crime of indecent behavior with a juvenile can be accomplished by the mere communication of lewd or lascivious conduct, text or images. In fact, this defendant would have been guilty of the completed crime had he made this request electronically. Further, to find this request for oral sex constitutes an attempt to commit indecent behavior with a juvenile is consistent with the legislative intent to protect children from sexual predators.

DECREE
For the reasons stated herein, we reverse the judgment of the court of appeal and reinstate the jury verdict.
REVERSED; JURY VERDICT REINSTATED.
KIMBALL, Chief Justice, dissents with reasons assigned by Justice KNOLL.
KNOLL, Justice, dissents with reasons.
WEIMER, Justice, dissents for the reasons assigned by KNOLL, Justice.
KIMBALL, C.J., dissenting.
I dissent from the majority opinion for the reasons assigned by Justice Knoll.
KNOLL, J., dissenting.
I cannot join the majority opinion finding that an oral comment, unaccompanied by any overt act, is legally sufficient to support a conviction of criminal attempt under La.Rev.Stat. § 14:27. Defendant's sexually charged comments were unquestionably crude, offensive, and wholly inappropriate. However, that alone does not make them worthy of criminal punishment. Louisiana's long-standing statutory and jurisprudential authority holds that a conviction for attempt must include an affirmative act towards the furtherance of the crime. Words alone, no matter how crude, *205 are insufficient. There is no record evidence that defendant committed any overt physical acthe did not take his clothing off, move towards the juvenile, or try to touch him. After the inappropriate words were spoken, the juvenile felt free to refuse the request and immediately left the room. Defendant let him go without threatening or intimidating him. As there is no evidence of any overt act towards the accomplishment of a crime, I respectfully dissent.

DISCUSSION
A conviction for attempt under La.Rev. Stat. § 14:27 requires the State to prove two elements beyond a reasonable doubt: a "specific intent to commit the particular offense" and an "overt act done for the purpose of and tending directly toward the accomplishment of the offense." State v. Love, 26 So.2d 156, 157, 210 La. 11 (1946). The crux of the question before us is whether defendant's lewd statement, without any accompanying physical action, constitutes an "overt act" furthering the crime of indecent behavior with a juvenile.
The "overt act" requirement distinguishes attempt from the related crime solicitation, which may be committed by words alone without any accompanying action. This distinction between solicitation and attempt is discussed in the reporter's comments to La.Rev.Stat. § 14:28:
Solicitation and attemptseparate offenses:
Very few states have enacted general statutes making it an offense to incite crime, but a number recognize it as a common law offense. In states where solicitation is not a separate offense, either by statute or by the adoption of common law crimes, there is some tendency to permit the person who solicits another to commit a crime to be convicted of an attempt. However, it is generally held that a solicitation does not constitute an attempt. Thus, it was felt that a special section should be proposed, punishing one who solicits or incites a felony.
Inciting a felony is a less serious offense than attempt, since it involves the contingency of the person solicited being unwilling to commit the crime. There is not the same dangerous proximity to success that is found in the attempt. Thus it is not surprising, that courts have usually refused to stretch the attempt concept to include this more remote, though equally anti-social, activity.

(Emphasis added, citations omitted).
The debate as to whether mere verbal solicitation qualifies as an attempt dates back to the late nineteenth century. 2 Wayne LaFave, Substantive Criminal Law § 11.1(f), p. 203 (2d ed.2003), citing 1 J. Bishop, Criminal Law § 768(c) (8th ed. 1892)(solicitation is attempt) and 1 F. Wharton, Criminal Law § 218 (12th ed. 1932)(solicitation is not attempt). The most recent edition of Wharton's treatise notes that, while there is "some authority to the contrary, most courts take the view that the mere act of solicitation does not constitute an attempt to commit the crime solicited." 4 Wharton's Criminal Law, § 671, p. 525 (15th ed.1996, Charles E. Torcia, ed.) Louisiana courts have consistently followed this majority rule in keeping solicitation and attempt as wholly separate crimes.
This Court directly addressed the issue in State v. Baxley, 93-2159 (La.2/28/94), 633 So.2d 142. The defendant, Johnny Baxley, approached an undercover police officer and offered twenty dollars for oral sex. He was arrested and charged with committing a "crime against nature" under La.Rev.Stat. § 14:89. The then-current version of § 14:89, which has since been *206 amended, included two subsections: § 14:89(A)(1), which forbid the "unnatural carnal copulation by a human being with another of the same sex or opposite sex or with an animal," and § 14:89(A)(2), which forbid the "solicitation by a human being of another with the intent to engage in any unnatural carnal copulation for compensation." (emphasis added). Baxley challenged the statute on constitutional grounds. Id. at 143.
Both parties agreed that Baxley could be charged under § 14:89(A)(2), as he had solicited the officer by offering money for oral sex. He thus had standing to challenge that portion of the statute. The State disputed Baxley's standing to challenge § 14:89(A)(1), as he had not actually engaged in any act of unnatural carnal copulation. Baxley argued he did have standing because he could have been found guilty of attempted unnatural carnal copulation as a responsive verdict; by approaching the officer and offering $20 for oral sex, a reasonable jury could have returned a guilty verdict for attempt. Id. at 145.[1] This Court disagreed and held Baxley's actions were legally insufficient to support a conviction for attempt:

Mere discussion or solicitation without a financial aspect cannot constitute an attempt to engage in conduct prohibited by LSA-R.S. 14:89(A)(1). Under LSA-R.S. 14:27, a person is guilty of an attempted crime if the person, "having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object." Thus, an act furthering a crime against nature is required before a court can find a defendant guilty of attempted crime against nature under LSA-R.S. 14:89(A)(1). Solicitation alone does not constitute an attempt to commit a crime. See LSA-R.S. 14:28 Comments.
Id. (emphasis added).
As the Court made clear in the preceding passage, a defendant has only committed an attempted crime if he has committed some "act" furthering the crime; mere words do not suffice. Id. at 145-46. Since Baxley's only alleged wrongful act was verbal, there was no "overt act" under La.Rev.Stat. § 14:27 and he could not be found guilty of attempt.
The majority attempts to distinguish Baxley based on the initial charge arising out of La.Rev.Stat. § 14:89, not La.Rev. Stat. § 14:81 as in the present case. But this is a meaningless distinction, as the relevant statute in this analysis is La.Rev. Stat. § 14:27. Baxley holds that mere words do not suffice to give rise to a conviction for attempt, and explicitly stated "[solicitation alone does not constitute an attempt to commit a crime." Id. at 145. Nothing in Baxley suggests its holding is limited to charges arising out of La.Rev. Stat. § 14:89; to the contrary, it applies generally to all cases involving criminal attempt.
We considered a similar issue in State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. Late one night, after his two young sons had gone to bed, Smith entered the children's shared bedroom. Id. at 443. The children were lying together in a single bed because they were afraid of their father, who came in, lay down on the other bed, and ordered his ten-year-old child to come to him. Id. at 443. The child walked over to the defendant's bed, and Smith told him to "sit on his chest so he could suck [the child's] penis." The child *207 began to cry and returned to his brother's bed. Id. The defendant was convicted of attempted aggravated crime against nature and subsequently challenged his conviction on the grounds of insufficient evidence.
This Court affirmed the conviction. We distinguished Baxley because whereas "Baxley's only act was to offer an undercover police officer who was sitting on a French Quarter stoop $20 for oral sex," there was ample evidence showing Smith committed the requisite "overt acts" in furtherance of the crime.
Unlike the defendant in Baxley who merely solicited oral sex, Smith did several acts in his attempt to engage in oral sex with his son. He entered his sons' room. He lay on Chad's bed, and he asked Chad to engage in oral sex with him. The nature of the act requested by defendant required compliance by his son, not action by defendant. Furthermore, in Baxley, the illegal solicitation took place on a public street between two adult strangers. An adult on a public street can reject unwanted sexual suggestions from strangers by ignoring the remarks and walking away. In the present case, the encounter occurred between father and son in the child's bedroom where the child was subject to the authority of his father and not free to leave.
Id. at 444-45.
Although the majority claims that there is no "rational basis" for distinguishing this case from Smith, the reported facts of that case reflect a significantly more coercive environment and a defendant who, unlike the instant defendant, went beyond mere words and actually committed physical overt acts in furtherance of indecent behavior with his own child. In Smith, we identified several factors which, taken in concert, constituted an overt act beyond mere solicitation. Smith entered his minor children's bedroom late at night, unbidden and unwelcome, and climbed into his child's bed in the dark. Smith was the only adult in the house, so there was no one who the child could call for help. He told, rather than asked, the victim to sit on his chest. Id. at 443. Given the natural authority and power which any parent has over his children, this was not a mere request but an order.
In my mind, this language is more than a solicitation or an asking, but rather constitutes an order or a telling by a person in a greatly superior position, i.e., adult vis-a-vis child; father vis-a-vis son; and is clearly distinguishable from the Baxley analysis.
State v. Smith, 94-388 (La.App. 3 Cir. 11/9/94) 645 So.2d 817, 821 (Saunders, J., dissenting).
Similarly, in State v. Peloquin, 04-667 (La.App. 3 Cir. 11/17/04), 888 So.2d 393, writ denied, 04-3170 (La.4/8/05), 898 So.2d 1280, the court of appeal followed this rule by requiring evidence of some overt act in furtherance of the crime. The defendant asked a fourteen-year-old girl if she wanted to see his penis. The girl said no and walked away. Id. at 396. Asking this question, while obviously inappropriate, was not attempted indecent behavior or attempted obscenity: "There was no testimony that Defendant did an act in furtherance of revealing his penis to K.P. The question was preparatory and not an overt act similar to that in Baxley." Id. at 396.
With this background in mind, it is clear that defendant Jones did not commit an "overt act" under Louisiana law. Jones's request for J.D. to put his penis in his face was, as stated in Baxley, "[m]ere discussion or solicitation without a financial aspect [which] cannot constitute an attempt." Baxley, 633 So.2d at 145.
*208 Notably, Jones did not try to touch J.D. or make any movements towards him. He did not remove his own clothes or try to remove J.D.'s clothes. When J.D. left the room, Jones made no effort to stop him. Nothing in the record suggests that J.D. felt physically threatened or was under any duress; J.D. testified he responded to Jones's comment by becoming offended, not scared.
Unlike Smith, Jones did not enter J.D.'s bedroom in the dark and order him to perform a sexual act. Instead, J.D. entered the room where Jones and Whatley were sitting, and J.D. was free to (and eventually did) leave the room. J.D. and Jones were not alone in the room, the lights were on, and other people in the house were awake. In Smith, the defendant's position as the victim's father, the young age of the child, and the other circumstances of the crime made the defendant's statement more in the nature of an order than a request. In Smith, we placed great importance on the finding that the "child was subject to the authority of his father and not free to leave." Smith, 661 So.2d at 445. Jones was not in a position of power over J.D., and J.D. felt free to ignore Jones and leave the room.[2] The most important distinction, however, is that the Smith defendant committed several overt, physical acts in furtherance of his attempted crime, while Jones did not.
In finding that a verbal request, without any accompanying physical action, qualifies as an "overt act," the majority effectively renders the "overt act" requirement meaningless. This holding goes against the weight of Louisiana jurisprudence and scholarly commentary and blurs the current bright line distinction between solicitation and attempt.
The majority justifies this result by reasoning that, because La.Rev.Stat. § 14:81 was enacted with a "protectionist goal" regarding juveniles, it should be construed broadly to give effect to the "legislative intent to protect children from sexual predators." A liberal interpretation of criminal statutes is forbidden by the rule of lenity, which requires this court to resolve any ambiguity in a criminal statute in favor of the accused. State v. Carr, 99-2209 (La.5/26/00), 761 So.2d 1271, 1274. This is no mere canon of statutory interpretation, but a Constitutional right arising from "fundamental principles of due process," which mandate that "courts must decline to impose punishment for actions that are not `plainly and unmistakably' proscribed" by the relevant statute. Dunn v. U.S., 442 U.S. 100, 112-13, 99 S.Ct. 2190, 60 L.Ed.2d 743 (1979), quoting U.S. v. Gradwell, 243 U.S. 476, 485, 37 S.Ct. 407, 61 L.Ed. 857 (1917). This rule requires us to construe a criminal statute strictly in favor of the defendant, and legislative intent cannot overrule the principles of due process recognized by the U.S. Supreme Court.
For this same reason, I cannot approve of the majority's reasoning that, because the prior version of La.Rev.Stat. § 14:81 criminalized lewd electronic communications towards juveniles, it also applies to lewd verbal communications. This construction is unsupported by the plain text of the statute, which explicitly refers only to "an electronic textual communication or an electronic visual communication." "The starting point in the interpretation of any *209 statute is the language of the statute itself." Red Stick Studio Dev. v. State, 2010-0193 (La.1/19/11), 56 So.3d 181, 188. We must assume every word of the statute serves a purpose: "it will not be presumed that the Legislature inserted idle, meaningless or superfluous language in the statute or that it intended for any part or provision of the statute to be meaningless, redundant or useless." ABL Management, Inc. v. Board of Sup'rs of Southern Univ., 2000-0798, (La.11/28/00), 773 So.2d 131, 135. If the statute is applied to all communications, the word "electronic" is effectively rendered meaningless.
Moreover, if the legislature had wished to make non-electronic communication illegal, it could have done so. Indeed, the Legislature has since broadened the scope of La.Rev.Stat. § 14:81(A)(2) to include not only electronic communications but also the "transmission, delivery, or utterance of any textual, visual, written, or oral communication depicting lewd and lascivious conduct, text, words, or images." See Acts 2009, No. 198. This is strong evidence that at the time of the alleged offense, such communications were not covered by the statute. When the legislature amends a statute, it is presumed to have intended to change the preexisting law. Brown v. Texas-LA Cartage, Inc., 98-1063 (La.12/1/98), 721 So.2d 885, 889. Applying the post-amendment language to punish the defendant's pre-amendment conduct would violate the ex post facto provisions of the U.S. and Louisiana Constitutions.[3]
This Court is also expressly forbidden from creating crimes by analogy: "the articles of this Code cannot be extended by analogy so as to create crimes not provided for herein." La.Rev.Stat. § 14:3. The import of this section is simple: "[t]he scope of a penal statute may not be enlarged by implication, or changes in social legislation, so as to include acts or persons not provided for therein." State v. Gonzales, 129 So.2d 796, 799 (La.1961). Accord, State v. Truby, 29 So.2d 758, 765, 211 La. 178 (1947)("the determination or definition of acts which are punishable as crimes is a purely legislative function which cannot be delegated to, or exercised by, the courts.") I believe the majority's decision to expand the reach of the statute beyond the relatively narrow category of electronic communications sets a potentially harmful precedent.
Finally, as a practical matter, the rationale behind this holding may affect many other statutes besides La.Rev.Stat. § 14:81(A)(2). Numerous Louisiana criminal statutes are specifically geared to electronic or computerized forms of communication.[4] If the reasoning of the majority opinion is correct, each of these statutes would also apply in a non-electronic context, thus vastly expanding their scope.
The facts of this case do not support a conviction of attempted indecent behavior with a juvenile. For the foregoing reasons, I would affirm the judgment of the court of appeal.
*210 WEIMER, J., dissenting.
I dissent for the reasons assigned by Justice Knoll.
NOTES
[1] This Court has previously defined "lewd and lascivious" in the context of La. R.S. 14:81(A) as an act which is "lustful, obscene, indecent, tending to deprave the morals in respect to sexual relations, and relating to sexual impurity or incontinence carried on in a wanton manner." State v. Interiano, 03-1760 (La.2/13/04), 868 So.2d 9, 15; State v. Holstead, 354 So.2d 493, 498 (La.1977). Oral sex with a juvenile victim would meet this definition.
[2] Since the trial, the Legislature has broadened the scope of subsection (A)(2) to include not only electronic communications but also "any textual, visual, written, or oral communication depicting lewd and lascivious conduct, text, words, or images."
[1] Baxley is an unusual case, as the customary positions of the defendant and the prosecution were reversed. The defendant argued his alleged actions did constitute a crime, while the State argued they did not.
[2] Although the majority claims that the defendant's position as Assistant Police Chief of LeCompte makes him an "authoritative figure" per se, Jones was not in uniform on the night in question, and he made no pretense of speaking in his official capacity as a police officer. There was no evidence showing J.D. felt particularly intimidated or submissive toward either Jones or Whatley.
[3] U.S. Const. art. 1, sec. 10; La Const., Art. 1, § 23.
[4] See, e.g., La.Rev.Stat. § 14:40.3 (cyberstalking); La.Rev.Stat. § 14:40.7 (cyberbullying); La.Rev.Stat. § 14:73.4 (wrongful denial of access to computer users); La.Rev.Stat. § 14:73.5 (computer fraud); La.Rev.Stat. § 14:73.6 (unlawful use of email service provider, i.e., anti-Spam act); La.Rev.Stat. § 14:73.7 (computer tampering); La.Rev.Stat. § 14:73.8 (unauthorized use of wireless system regarding pornography against juveniles); La.Rev.Stat. § 14:73.9 (criminal use of Internet map); La.Rev.Stat. § 14:81.1.1 ("sexting"); La.Rev.Stat. § 14:81.3 (computer-aided solicitation of a minor); La.Rev.Stat. § 14:90.3 (gambling by computer); La.Rev. Stat. § 14:323 (unauthorized use of electronic tracking device).