STATE OF LOUISIANA        *        NO. 2019-KA-0172

VERSUS        *

       COURT OF APPEAL

MANUEL DUKES        *

       FOURTH CIRCUIT

       *

       STATE OF LOUISIANA

* * * * * * *


APPEAL FROM
CRIMINAL DISTRICT COURT ORLEANS PARISH
NO. 526-845, SECTION "H"
Honorable Camille Buras, Judge
* * * * * *
**Judge Dale N. Atkins**
* * * * * *
(Court composed of Chief Judge James F. McKay, III, Judge Paula A. Brown,
Judge Dale N. Atkins)

Leon Cannizzaro
DISTRICT ATTORNEY
ORLEANS PARISH
Donna Andrieu
CHIEF OF APPEALS
ORLEANS PARISH
Scott G. Vincent
Assistant District Attorneys
ORLEANS PARISH
619 South White Street
New Orleans, LA 70119

       COUNSEL FOR STATE OF LOUISIANA/APPELLEE

Bruce G. Whittaker
LOUISIANA APPELLATE PROJECT
1215 Prytania Street, Suite 332
New Orleans, LA 70130-4357

       COUNSEL FOR DEFENDANT/APPELLANT

               **AFFIRMED**
               **OCTOBER 2, 2019**

In this appeal, defendant, Manuel Dukes ("Defendant"), seeks review of his conviction on two counts of attempted indecent behavior with a juvenile. For the reasons that follow, we affirm Defendant's conviction and find no error in the trial court's denial of Defendant's Motion for Judgment of Acquittal and denial of Defendant's Motion for New Trial.

## PROCEDURAL HISTORY

On October 22, 2015, the Orleans Parish District Attorney filed a bill of information charging Defendant with two counts of indecent behavior with a juvenile, namely C.S and C.B., in violation of La. R.S. 14:81. Count 1of the bill of information stated that Defendant, on October 5, 2014:

> committed indecent behavior with a juvenile, namely: C.S., date of birth 07/23/2008, a child under the age of seventeen, by committing a lewd or lascivious act upon C.S. thereby arousing the desires of the said Manuel Dukes aka Dee Dukes, there being an age difference greater than two (2) years between C.S. and Manuel Dukes aka Dee Dukes[.]

Count 2 of the bill of information stated that Defendant, on October 5, 2014:

> committed indecent behavior with a juvenile, namely: C.B., date of birth 02/22/2004, a child under the age of seventeen, by committing a lewd or lascivious act upon the child, thereby arousing the desires of the said Manuel

Dukes aka Dee Dukes, there being an age difference greater than two (2) years between C.B. and Manuel Dukes aka Dee Dukes[.][1]

At his arraignment on January 8, 2016, Defendant pled not guilty. Defendant waived his right to a trial by jury and the matter proceeded to a bench trial on January 16 and 23-25, 2018. At the close of the State's case, Defendant filed a Motion for Judgment of Acquittal. The trial court denied the motion. After considering the evidence, the trial court judge found Defendant guilty of the responsive verdict attempted indecent behavior with a juvenile as to both counts.

After the trial court rendered its verdict, Defendant filed a Motion for New Trial. On September 21, 2018, the trial court heard and denied Defendant's motion. On October 12, 2018, Defendant was sentenced on each count to three years, six months, at hard labor, suspended, and three years, six months active probation, to run concurrently. He was also required to register as a sex offender and attend sex offender treatment classes. This appeal followed.

## STATEMENT OF FACTS

On October 5, 2014, the New Orleans Police Department ("NOPD") received a report of child sexual abuse and dispatched Detective Timothy Jones to 1631 Desire Street, the address of the reported offense. Det. Jones wore his body camera, which recorded his preliminary investigation. The footage showed Det. Jones arriving on the scene, where he was met by several family members gathered outside the home. He spoke with the mother of C.B., one of the victims. The mother stated that Defendant was in the bedroom with the two children and

---

[1] The victims' initials will be used in this opinion. La. R.S. 46:1844(w) prohibits public disclosure of the name, addresses, or identities of victims of sex offenses, authorizing use of initials, abbreviations.

"must've pulled his thing out. They say he didn't touch them or show them or anything like that." She explained that everyone gathered outside was family who came together at the grandmother's house to watch the Saints game. Det. Jones requested a child abuse detective to be dispatched to the scene while he continued his interview with C.B.'s mother. She stated that Defendant left the house when he was told the police were being called.

Next, Det. Jones interviewed Cynthia Bee, grandmother of C.B. and C.S., the two victims. Cynthia Bee stated that while she was getting ready for church after watching the Saints game with her family, she walked down the hallway of her mother's house. As Ms. Bee passed an open doorway, she looked into the room and saw Defendant had his penis in his hand. She indicated that his penis was in an aroused state. She saw C.B. and C.S. standing on the side of the bed, changing the baby's diaper, while Defendant was telling them to "Get up out of here! Get up out of here!" It was Ms. Bee's belief that Defendant was saying that to get the children's attention to look in his direction. Ms. Bee, upset by what she saw, went to the kitchen to tell her mother what she witnessed. Defendant followed her and attempted to shake her hand. He denied it was his penis, telling her that what she thought she saw was actually his belt.[2] Ms. Bee disagreed, asserting that Defendant was not wearing a belt.

Detective Jones concluded his interview with Ms. Bee by asking her, "Has there been any issues like this in the past?" Ms. Bee replied in the affirmative,

---

[2] During her trial testimony, Ms. Bee said Defendant claimed he was holding his cell phone, but she remained certain of what she saw.

adding "a long time ago." When Det. Jones asked the mothers of C.B. and C.S. the same question, both women confirmed that something similar happened with Defendant a long time ago.

Det. Jones informed the mothers that someone from Child Abuse Services was on her way over to conduct interviews with the victims and that the mothers should avoid any discussion of the incident with C.B. and C.S. while he completed his investigation.

Shortly thereafter, NOPD Special Victims Detective Jaunay Ross arrived on the scene to pick up the investigation where Det. Jones left off. Ms. Bee, C.B., and C.B.'s mother were each interviewed separately by Det. Ross. When she interviewed C.B., the victim stated that she and her cousin were asked to change a baby's diaper, so they entered the room where the diapers were kept and saw Defendant lying on the bed. C.B. recalled that C.S. began playing on a cell phone, while C.B. started changing the baby's diaper. During this initial interview, C.B. told Det. Ross that she did not see Defendant's penis because she was not looking in that direction.

Ten days later, Joshua Long, a forensic interviewer at the Children's Advocacy Center in Children's Hospital, interviewed C.B. and C.S. During C.S.'s interview, she stated that she had gone into a bedroom at her grandmother's house to change a baby's diaper when Defendant lowered his pants and exposed his "thing." She knew that her "maw maw" had observed the incident but recalled

4

nothing more. Out of concern for the child's well-being, Long ended the interview when C.S began to exhibit signs of anxiety.

C.B. recounted the incident with more detail during her forensic interview with Long. She stated that she was in the bedroom, changing the baby's diaper, when Defendant entered the room, lay across the bed, and told C.S. to move behind him. C.B. stated that Defendant then "unbuckled" his pants, put both of his hands in his pants, and "pulled out his thing." Immediately thereafter, her grandmother passed the door, looked inside, and Defendant exited the bedroom, followed her grandmother, trying to shake her hand. C.B. said that while the family waited for the police to arrive that afternoon, Defendant whispered to her to not tell anyone what happened and then he left the house.

C.B. told Long that she believed C.S. may have also witnessed defendant exposing himself as he was lying flat on the bed, holding his genitals in the air. She said that when Defendant told her to look in his direction, she thought C.S. had also briefly looked.

During the forensic interview with Long, C.B. also told of two other incidents involving Defendant that occurred the same day but at separate times. Once, while she was sitting on the sofa in the living room, Defendant grabbed C.B.'s legs, pulled her off the sofa and onto the floor, spread her legs open, and placed his body between them. He was fully clothed at the time, but it still made her feel "creepy." She also told the interviewer that her mother, grandmother, and aunt were all present during the incident. In the second incident, C.B. recalled that

5

Defendant chased her down the hallway earlier in the day. She remembered that his hands were in his pants at the time.

Based on the initial interviews Det. Ross conducted, as well as the forensic interviews conducted by Long that she observed on closed circuit television, Det. Ross procured an arrest warrant and charged Defendant with two counts of indecent behavior with a juvenile.

## ERRORS PATENT

As required by La. C.Cr.P. art. 920, a review of the record for errors patent reveals none.[3]

## DISCUSSION

On appeal, Defendant asserts two assignments of error. Defendant claims the trial court erred when it denied his Motion for Acquittal. Defendant also argues the trial court erred when it denied his Motion for New Trial based on the State's failure to disclose favorable and impeaching evidence.

**Assignment of Error Number One—Sufficiency of Evidence**

As his first assignment of error, Defendant asserts the evidence presented by the State was insufficient to support the charges alleged in the bill of information. Defendant argues that both counts in the indictment alleged that defendant committed a lewd or lascivious act *upon* the victims, who were under the age of seventeen, with more than a two-year age difference between defendant and the victims, but presented no evidence that defendant touched either victim in any

---

[3] La. C.Cr.P. art. 920(2) defines error patent as errors "discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence."

6

way.[4] Accordingly, Defendant contends that the State failed to prove an essential element of the offense and the trial court should have granted Defendant's Motion for Acquittal.

When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. When the entirety of the evidence both admissible and inadmissible is sufficient to support the conviction, the accused is not entitled to an acquittal, and the reviewing court must review the assignments of error to determine whether the accused is entitled to a new trial. *State v. Hearold*, 603 So.2d 731, 734 (La. 1992).

When reviewing the sufficiency of the evidence to support a conviction, Louisiana appellate courts apply the standard enunciated in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under this standard, the appellate court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proven beyond a reasonable doubt. *State v. Tate*, 01-1658, p. 4 (La. 5/20/03), 851 So.2d 921, 928.

The principal criteria of a *Jackson v. Virginia* review is rationality. *State v. Mussall*, 523 So.2d 1305, 1310 (La. 1988). In reviewing the evidence, the whole record must be considered because a rational trier of fact would consider all the evidence, and the actual trier of fact is presumed to have acted rationally until it appears otherwise. *Id*. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier's view of all the evidence most favorable to the

---

[4] During oral argument on the issue, the State conceded that it was limited at trial to proof that Defendant performed a lewd or lascivious act *upon* the victims to sustain a conviction.

prosecution must be adopted. *Id.*; *State v. Egana*, 97-0318, p. 6 (La. App. 4 Cir. 12/3/97), 703 So.2d 223, 228. *State v. Green,* 588 So.2d 757, 758 (La. App. 4 Cir. 1991). It is not the function of the appellate court to assess the credibility of witnesses or reweigh the evidence. *State v. McGhee*, 2015-2140, p. 2 (La. 6/29/17), 223 So.3d 1136, 1137. *See also State v. Scott*, 2012-1603, p. 11 (La. App. 4 Cir. 12/23/13), 131 So.3d 501, 508. Credibility determinations, as well as the weight to be attributed to the evidence, are soundly within the province of the trier of fact. *Id.*, (citing *State v. Brumfield*, 93-2404 (La. App. 4 Cir. 6/15/94), 639 So.2d 312, 316). "Moreover, conflicting testimony as to factual matters is a question of weight of the evidence, not sufficiency. Such a determination rests solely with the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness." *Id.*, (citing *State v. Jones,* 537 So.2d 1244, 1249 (La. App. 4 Cir. 1989). "Absent internal contradiction or irreconcilable conflict with the physical evidence, a single witness' testimony, if believed by the fact finder, is sufficient to support a factual conclusion." *State v. De Gruy*, 2016-0891, p. 11 (La. App. 4 Cir. 4/5/17), 215 So.3d 723, 730, *writ denied*, 2017-0752 (La. 1/9/18), 231 So.3d 652.

The standard established in *Jackson v. Virginia* is applicable to both direct and circumstantial evidence. *State v. Wade*, 39,797, p.7 (La. App. 2 Cir. 8/9/05), 908 So.2d 1220, 1224. When the conviction is based on circumstantial evidence, La. R.S. 15:438 sets forth the rule that "assuming every fact to be proved that the evidence tends to prove, in order to convict, [the circumstantial evidence] must exclude every reasonable hypothesis of innocence." However, La. R.S. 15:438 does not establish a stricter standard of review than the more general rational fact finder's reasonable doubt formula; rather it serves as a helpful evidentiary guide for the trier of fact when evaluating circumstantial evidence. *State v. Toups*, 2001-

8

1875, p. 3 (La.10/15/02), 833 So.2d 910, 912; *State v. Chism*, 436 So.2d 464, 470 (La.1983). When evaluating circumstantial evidence, the trier of fact must consider:

> the circumstantial evidence in light of the direct evidence, and vice versa, [and] the trier of fact must decide what reasonable inferences may be drawn from the circumstantial evidence, the manner in which competing inferences should be resolved, reconciled or compromised; and the weight and effect to be given to each permissible inference. From facts found from direct evidence and inferred from circumstantial evidence, the trier of fact should proceed, keeping in mind the relative strength and weakness of each inference and finding, to decide the ultimate question of whether this body of preliminary facts excludes every reasonable hypothesis of innocence.

*State v. Rose*, 2005-0396, p. 2 (La.App. 4 Cir. 4/13/07), 955 So.2d 270, 272, citing *Chism*, 436 So.2d at 469.

On October 22, 2015, the State charged Defendant by bill of information with two counts of violating La. R.S. 14:81(A)(1). In Count One, the State alleged that on October 5, 2014, Defendant committed:

> indecent behavior with a juvenile, namely: C.S., date of birth 07/23/2008, a child under the age of seventeen (17) by committing a lewd or lascivious act upon C.S. thereby arousing the desires of Manuel Dukes aka Dee Dukes there being an age difference of greater than two (2) years between C.S. and Manuel Dukes aka Dee Dukes[.]

In Count Two, the State alleged that on October 5, 2014, Defendant committed:

> indecent behavior with a juvenile, namely: C.B., date of birth 02/22/2004, a child under the age of seventeen (17) by committing a lewd or lascivious act upon C.B. thereby arousing the desires of Manuel Dukes aka Dee Dukes there being an age difference of greater than two (2) years between C.B. and Manuel Dukes aka Dee Dukes[.]

After a bench trial, the trial court judge found Defendant guilty of two counts of attempted indecent behavior with a juvenile under the age of seventeen in violation of La. R.S. 14:(27) 81(A)(1). Defendant argues that insufficient evidence was presented at trial to support the charges in the bill of information. It is his position that because the bill does not allege the offense was committed "in the

9

presence of" C.S. and C.B., the evidence offered by the State does not support the allegation the offense was committed "upon" the two victims.

La. R.S. 14:81(A)(1) states:

Indecent behavior with juveniles is the commission of any of the following acts with the intention of arousing or gratifying the sexual desires of either person:

(1)      Any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons….

In order to convict a defendant of indecent behavior with a juvenile, the State must prove the following three elements:

(i)      an age difference of more than two years between the defendant and the victim, who was not yet seventeen;
(ii)      the defendant committed a lewd or lascivious act upon the person or in the presence of a child; and
(iii)      the defendant intended to arouse or gratify either his own or the victim's sexual desires. *State v. Anderson,* 09–934, pp. 6–7 (La.App. 5 Cir. 3/23/10), 38 So.3d 953, 957–958 (citing *State v. Lyles,* 03–141 (La.App. 5 Cir. 9/16/03), 858 So.2d 35, 50).

*State v. Summers*, 2010-0341 (La.App. 4 Cir. 12/1/10, 7), 52 So.3d 951, 956, *writ denied*, 2010-2829 (La. 4/29/11), 62 So.3d 108.

La. R.S. 14:27 defines attempt as:

Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.

Mere preparation to commit a crime shall not be sufficient to constitute an attempt; but lying in wait with a dangerous weapon with the intent to commit a crime, or searching for the intended victim with a dangerous weapon with the intent to commit a crime, shall be sufficient to constitute an attempt to commit the offense intended.

The State must prove two elements to constitute an attempt: that the defendant had specific intent and that the defendant committed or omitted "an act

10

for the purpose of and tending directly toward the accomplishing of his object, sometimes referred to as an 'overt act'." *State v. Ordodi*, 06-0207 (La. 11/29/06), 946 So.2d 654, 661. Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La. R.S. 14:10(1); *Id.* Specific intent may be inferred from the circumstances surrounding the offense and the conduct of the defendant. *Ordodi*, at 661; *State v. Weary*, 03-3067 (La. 4/24/06), 931 So.2d 297, 310, *cert. denied*, 549 U.S. 1062, 127 S.Ct. 682, 166 L.Ed.2d 531 (2006). The determination of whether specific intent exists is a question of fact. *Ordodi*, *supra* at 661*; State v. Legrand*, 02-1462 (La. 12/3/03), 864 So.2d 89, 96, *cert. denied*, 544 U.S. 947, 125 S.Ct. 1692, 161 L.Ed.2d 523 (2005). However, specific intent to commit the offense of indecent behavior with a juvenile need not be proven as fact; rather, it may be inferred from the circumstances and actions of the defendant. *State v. Morrison*, 40,852, p. 6 (La. App. 2 Cir. 4/12/06), 927 So.2d 670, 674.

*Attempt*

Defendant's specific intent can be inferred from the circumstances and his conduct surrounding the offense. In her forensic interview and later, on the witness stand, C.B. recounted how Defendant pulled her off the sofa by her legs, spread them, and then put himself between them. C.B. also stated Defendant chased her down the hall with his hands in his pants. Defendant knew that C.S. was present in the room because he addressed her directly prior to exposing himself, telling her to

get behind him.[5] Once C.S. moved to the head of the bed, both of the victims had an unobstructed view of Defendant as he lay flat on his back, reached into his pants, and exposed his penis. Considering this evidence in the light most favorable to the prosecution, we find that a rational trier of fact could find the State proved beyond a reasonable doubt that Defendant had the requisite specific intent to commit a lewd or lascivious act upon the victims.

In *State v. Jones*, the Supreme Court discussed what constitutes an overt act, the second element necessary for an attempt. *Jones*, 2010-0762, p.6-7 (La. 9/7/11), 74 So.3d 197, 202. The attempt statute makes a distinction between actions which are "mere preparation" and are not sufficient to constitute attempt, and acts which are committed for the purpose of and tending directly toward the accomplishing of the criminal object. *Ordodi*, at 662. However, the Court noted that the distinction is not clearly defined and that actions which are mere preparation and those which constitute an overt act "exist on a continuum." *Id.* Where a defendant's actions fall on the continuum is a question for the trier of fact and is determined by evaluating the "the totality of the facts and circumstances presented by each case." *Id.* (citing *State v. Smith*, 94-3116 (La. 10/16/95), 661 So.2d 442, 444; *State v. Williams*, 490 So.2d 255, 261 (La. 1986), *cert. denied*, 483 U.S. 1033, 107 S.Ct. 3277, 97 L.Ed.2d 780 (1987)). The overt act need not be the ultimate step toward or the last possible act in the consummation of the crime attempted, and it is the intent to commit the crime, not the possibility of success, that determines whether the act or omission constitutes the crime of attempt. *Smith*, *supra* at 445. Further, a person

---

[5]In her forensic interview, C.B. recounted that Defendant "was laid down across the bed" when he told C.S. to get behind him. This put C.S. at the head of the bed, C.B. at the foot, and Defendant in between.

may be found guilty of attempt as a responsive verdict even though the evidence shows he committed the actual crime charged. *State v. Credeur*, 328 So.2d 59, 61 (La. 1976).

In *Jones*, the Court further examined the issue of attempt as it applies to La. R.S. 14:81:

> In interpreting these statutes to determine whether defendant's actions constitute an attempt, "it is a well-recognized and long-established rule of statutory construction that a statute should be interpreted as a whole to effect the legislative intent and should be construed in such way to reconcile, if possible, apparent inconsistencies of ambiguities so that each part is given effect." *State v. Fussell*, 06–2595 (La.1/16/08), 974 So.2d 1223, 1231 (citing *State ex rel. A.M.*, 98–2752 (La.7/2/99), 739 So.2d 188, 190). Further, we have interpreted statutes dealing with sex crimes against children in light of the legislature's "protectionist" goal when drafting these statutes considering that "juveniles have been 'historically recognized as a special class of persons in need of protection…'" *Fussell*, *supra* at 1234 (citing *State v.Granier*, 99–3511 (La.7/6/00), 765 So.2d 998, 100). In enacting La. R.S. 14:81(A), the legislature intended the statute "to apply to behavior which falls short of intercourse [when] carried on with young children." *State v. Interiano*, 2003-1760, p. 7 (La. 2/13/04), 868 So.2d 9, 15, (citing 1942 La. Acts 43 § 81 (Official Comment)). We have held that "the legislative history shows a compelling state interest in protecting children from the physical and psychological harm that can result from sexual acts committed 'upon the person' of the child and the psychological impact that having such acts committed in their presence may cause." *Id*. at 15–16.

*State v. Jones*, 2010-0762 (La. 9/7/11), 74 So.3d 197, 201.

We must now determine if there was sufficient evidence put forth by the State to support the conviction by a rational trier of fact. Specifically, was there sufficient evidence to prove the Defendant attempted to commit a lewd or lascivious act upon C.B. and C.S. with the intention to arouse or gratify either his own or the victims' sexual desires, there being an age difference of more than two years between the Defendant and the victims, who were not yet seventeen?

The Supreme Court in *Interiano* defines a lewd or lascivious act as one that is "lustful, obscene, indecent, tending to deprave the morals in respect to sexual

13

relations, and relating to sexual impurity or incontinence carried on in a wanton manner." *Interiano*, 2003-1760 at 7, 868 So.2d at 15, citing *State v. Holstead*, 354 So.2d 493, 498 (La. 1977). The Court held that a person knowingly engaged in any overt sexual activity performed in the physical proximity of a child enters a zone of danger in which he runs the risk that a trier of fact may later find that activity criminal in nature. C.S. and C.B. testified Defendant exposed himself on the day in question. The victims' grandmother confirmed the exposure. Her testimony and statements to the police were consistent, as she described what she witnessed through the open doorway to the room where Defendant exposed himself. C.B. recalled Defendant telling her to look in his direction while he was exposed, saying "Look Tay! Look!" Before Defendant left the scene to avoid the arrival of the police, he warned C.B. to not tell anyone what happened that day. Given the testimony of the victims, the grandmother's eyewitness account, the Defendant's statements made to C.B., both during and after the incident, and the nature of the act itself, a rational trier of fact could conclude the Defendant exposed himself, thereby committing a lewd or lascivious act.

Defendant was charged with committing a lewd and lascivious act upon C.S. and C.B. The word "upon" in this context is defined as "the physical touching of the victim." *Interiano*, 2003-1760, at 7, 868 So.2d at 15.[6] Neither the testimony of the victims nor the eyewitness account of the grandmother indicated Defendant physically touched C.B. and C.S. However, a rational trier of fact, taking into account all of the evidence admitted at trial and viewed in the light most favorable

---

[6] The Court cites the Comments to La. R.S. 14:81 for the definition: "[A]s the Reporter's Comment to La. R.S. 14:81(A) observes, the state [sic] encompasses not only the physical touching of the victim in an indecent manner, but also 'indecent sexual displays in the presence of children under the age of seventeen.'"

14

to the prosecution, could conclude Defendant was attempting to commit a lewd and lascivious act upon C.S. and C.B., only to be interrupted by the grandmother witnessing the act. The physical proximity of Defendant in relation to C.S. and C.B., placing himself between the victims as he laid across the bed, and most importantly, calling attention to himself as he exposed his aroused penis suggests Defendant was attempting to commit a lewd and lascivious act upon the victims. C.S. testified that she did not see Defendant's penis. However, she also testified that she "became aware of it" without being told Defendant took his "private part" out. She goes on to say that she was upset when he "pulled his thing out, just mad." At her forensic interview conducted ten days after the incident, she said Defendant "took his thing out when I was changing the baby's [diaper]. He showed us his thing." When asked to tell the interviewer "everything you saw," her response was that her uncle "pulled his thing out while she and [C.B.] were changing her cousin's diaper."

Appellant's argument for reversing the trial court's conviction for an insufficiency of evidence is without merit. As the Court stated in *Jones,* "it is the intent to commit the crime, not the possibility of success that determines whether the act or omission constitutes the crime of attempt." *Jones*, 2010-0762 at 7, 74 So.3d at 202. Whether C.S. ever saw Defendant's exposed penis is not necessary to convict Defendant. It was Defendant's intent to commit the crime that determined whether his actions constituted an attempt. The victims' testimony, corroborated by Ms. Bee, the victims' grandmother and witness to the encounter, is more than sufficient to establish that Defendant exposed himself, a lewd and lascivious act that aroused the desires of Defendant. Evidence of the victims' ages can be found in the trial testimony of their grandmother, as well as C.S. and C.B.'s forensic

15

interviews that were admitted into evidence as State's Exhibit 3 and 4. Lastly, the evidence sufficiently establishes an age difference greater than two years between Defendant and the victims.

After reviewing the totality of the evidence before the trial court judge, viewed in the light most favorable to the prosecution, this Court finds that a rational trier of fact can conclude there is sufficient evidence to support the convictions of attempted indecent behavior with C.S. and C.B.

**Assignment of Error Two—Brady Violation**

As his second assignment of error, Defendant argues that the trial court erred in denying his motion for a new trial due to the State's failure to disclose Ms. Bee's prior convictions as impeachment evidence in violation of *Brady v. Maryland*, 373 U.S. 83; 83 S.Ct. 1194; 10 L.Ed.2d 215 (1963), *Giglio v. United States*, 405 U.S. 150; 92 S.Ct. 763; 31 L.Ed.2d 104 (1972), and the Due Process clause of the Fourteenth Amendment. After reviewing the record and the applicable law, we find no error in the trial court's denial of the motion.

On January 8, 2016, Defendant filed an omnibus motion that included a discovery request for "all records and information revealing prior convictions or guilty verdicts or juvenile adjudication to each witness called by the State, including but not limited to relevant 'rap sheets.'" According to Defendant, nothing was produced with respect to Ms. Bee. However, on January 25, 2018, the morning of closing arguments, defense counsel learned from Defendant's wife that Ms. Bee recently pled guilty to a DWI charge. Before the start of closing arguments, the trial court judge met with counsel in a transcribed in chambers proceeding. When confronted by defense counsel with evidence of the conviction, the State admitted it failed to disclose Ms. Bee's 'rap sheet' and her DWI arrest

and conviction. Prior to returning to the courtroom for closing arguments, the trial court judge ruled that the 'rap sheet' was proper impeachment evidence and marked it as a defense exhibit "for appeal purposes."

On January 26, 2018, after the trial court rendered its verdict, Defendant filed a motion for new trial premised upon the State's failure to disclose Ms. Bee's criminal history. The motion for new trial was denied by the trial court on September 21, 2018.

Ms. Bee's criminal history reveals: a 1992 arrest for possession of cocaine and paraphernalia, for which she was never charged; a 1995 conviction for possession of cocaine; and a 2016 arrest for DWI, adjudicated as a conviction in traffic court. The record provides that Ms. Bee pled guilty to the DWI charge on August 15, 2017, but had yet to be sentenced at the time of Defendant's trial.

Defendant argues that had he known of Ms. Bee's arrest for DWI, he would have impeached her on cross-examination regarding her testimony that she had not consumed any alcohol on the day of the incident and was not impaired when she observed Defendant expose himself to the victims.

La. C.Cr.P. art. 851 sets forth the grounds for a new trial, and states in pertinent part:

> A. The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.
>
> B. The court, on motion of the defendant, shall grant a new trial whenever any of the following occur:
>
> * * *
>
> (3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced

at the trial it would probably have changed the verdict or judgment of guilty.

"A defendant bears the burden of proof when seeking a new trial as a result of his conviction, previously obtained by the prosecution." *State v. Hayes*, 2017-0789, p. 28, (La. App. 4 Cir. 3/27/19), ___ So.3d ___, ___ (citing *State v. Armstead*, 14-0036, p. 25 (La. App. 4 Cir. 1/28/15), 159 So.3d 502, 519.) Appellate review of the ruling of a trial court on a motion for a new trial shall be invoked only to consider error of law. La. C.Cr.P. 858; *Hayes*, 2017-0789, p. 28, __So.3d__ (citing *State v. McKinnies*, 13-1412, p. 9 (La. 10/15/14), 171 So.3d 861, 869.) A reviewing court will attach great weight to the exercise of a trial court's discretion; however, an abuse of that discretion will be considered an error of law. *Id.* (citing *McKinnies*, 13-1412, p. 9, 171 So.3d at 869.) "When the allegations of a motion for new trial are not supported by proof, a trial judge properly overrules the motion. Allegations raised in the motion alone are not sufficient, as a defendant has the burden to show that an injustice has been done to him." *Id.*at p.29 (citing *McKinnies*, 13-1412, p. 11, 171 So.3d at 870.)

Under La. C.Cr.P. 851, newly discovered evidence must first be determined to be "material." Evidence is material only if it is reasonably probable that the result of the proceeding would have been different had the evidence been disclosed. *Id.* (citing *State v. Marshall*, 94-0461, p. 16 (La. 9/5/95), 660 So.2d 819, 826 (citing *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985)). "A reasonable probability is one that is sufficient to undermine confidence in the outcome" of the trial. *Id.* (citing *Marshall*, 94-0461, p. 16, 660 So.2d at 826.) In *State v. Watts*, 00-0602, p. 9 (La. 1/14/03), 835 So.2d 441, 449, the Court held that a trial court should ascertain on a motion for new trial

"whether there is new material fit for a new jury's judgment. The only issue is whether the result will probably be different."

The Due Process clause of the Fourteenth Amendment requires that the state disclose to the defense evidence that is favorable to the defense and is material to guilt or punishment. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *State v. Garcia*, 2009-1578, p. 51 (La.11/16/12), 108 So.3d 1, 36-37 *cert. denied*, *Garcia v. Louisiana*, —— U.S. ——, 133 S.Ct. 2863, 186 L.Ed.2d 926 (2013); Stat*e v. Hollins*, 2011-1435 (La. App. 4 Cir. 8/29/13), 123 So.3d 840, 858,; *State v. Crawford*, 2002-2048, pp. 9-10 (La. App. 4 Cir. 2/12/03), 848 So.2d 615, 623-624.

In *Brady*, 373 U.S. 83, the United States Supreme Court held that the suppression by the prosecution of evidence favorable to the accused after receiving a request for it violates a defendant's due process rights where the evidence is material either to guilt or punishment, without regard to the good or bad faith of the prosecution. *Id.*, 373 U.S. at 87, 83 S.Ct. at 1196-97. The *Brady* rule encompasses evidence that impeaches the testimony of a witness when the reliability or credibility of that witness may determine guilt or innocence. *United States v. Bagley*, 473 U.S. 667, 676, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481 (1985); *Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 756, 31 L.Ed.2d 104 (1972); *State v. Knapper*, 579 So.2d 956, 959 (La. 1991). *Brady* and its progeny, however, do not establish a general rule of discoverability. A prosecutor does not breach his constitutional duty to disclose favorable evidence "unless the omission is of sufficient significance to result in the denial of the defendant's right to a fair trial." *United States v. Agurs*, 427 U.S. 97, 112, 96 S.Ct. 2392, 2400, 49 L.Ed.2d 342 (1976); *State v. Willie,* 410 So.2d 1019, 1030 (La. 1982). For

19

purposes of *Brady's* due process rule, a reviewing court determining materiality must ascertain:

> not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.

*Kyles v. Whitley*, 514 U.S. 419, 434, 115 S.Ct. 1555, 1566, 131 L.Ed.2d 490 (1995) (citing *Bagley*, 473 U.S. at 678, 105 S.Ct. at 3381); *see also State v. Strickland*, 94-0025, p. 38 (La. 11/1/96), 683 So.2d 218, 234 (quoting *State v. Marshall*, 81-3115, p. 13-15 (La. 9/5/95), 660 So.2d 819, 825 (quoting *Kyles*)). Thus, the reviewing court does not put the material to an outcome-determinative test in which it weighs the probabilities that the petitioner would have obtained an acquittal at trial or might do so at a second trial. Instead, a *Brady* violation occurs when the "evidentiary suppression 'undermines confidence in the outcome of the trial.'" *Kyles*, 514 U.S. at 434, 115 S.Ct. at 1566 (quoting *Bagley*, 473 U.S. at 678, 105 S.Ct. at 3381); *See also State v. Bright*, 2002-2793, pp. 5-6 (La. 5/25/04), 875 So.2d 37, 43.

La. C.Cr.P. art. 717 requires the State, upon written request of the Defendant, to turn over copies of the State's witnesses' arrest and conviction records. La. C.Cr.P. art. 729.3 makes the State's duty to disclose a continuing one, so that if it discovers or obtains evidence prior to or during trial, it must notify the opposing party and the court promptly of the existence of the additional evidence. However, the failure by the State to comply with the discovery rules requires reversal only when that failure results in prejudice to the defendant. *State v. Elie*, 2005-1569, pp. 15-16 (La. 7/10/06), 936 So.2d 791, 802.

Defendant argues that he was prejudiced because he was not able to cross-examine Ms. Bee regarding her guilty plea to a DWI charge to impeach her testimony that she had not consumed alcohol on the day of the incident. Defendant also suggests in his brief that Ms. Bee may have been biased in her testimony by hoping for leniency from the State in her upcoming sentencing on the DWI conviction.

Although the trial court indicated that Ms. Bee's DWI arrest and conviction would be "proper impeachment evidence on this specific issue," the evidentiary value and its materiality are questionable, as it is unclear how it would call into question Ms. Bee's testimony that she refrained from drinking alcohol on October 5, 2014 because she planned to attend church. The arrest did not occur until approximately two years after the instant offense, and the conviction did not exist until over a year-and-a-half after Defendant filed his omnibus motion requesting witnesses' prior convictions.

Defendant does not allege that Ms. Bee was arrested for DWI on her way to church, and there is no evidence in the record that Ms. Bee consumed alcohol on a regular basis, or to the extent that her recollection was clouded. The evidence on which Defendant relies in contending that Ms. Bee had been drinking on the day of the incident is his own suggestion that the bottles on top of the vehicle in Det. Jones's body camera footage contained alcohol, despite testimony from C.B. that she knew the bottles contained soft drinks because she had personally purchased the items from the store. Defendant also asserted in his closing argument that his cross-examination of C.S., who was five years old at the time of the offense and nine years old at trial, proved that the bottles contained alcohol. The trial transcript provides, in part:

**DEFENSE:** And so you're telling the judge that there was no one drinking alcohol at the house that day.

**C.S.:** Yes.

(Defense shows the witness a (blurry) still shot taken from the body camera footage; Defense Exhibit 1)

**DEFENSE:** And what are those on the hood of that police car? On the hood of the trunk of that car? What is that stuff there?

**C.S.:** Alcohol?

**DEFENSE:** It's alcohol isn't it?

**C.S.:** Yes.

\* \* \*

**DEFENSE:** So you lied.

**C.S.:** Yes. I think (whispering).

A review of this colloquy indicates that C.S. was merely guessing that the bottles contained alcohol. Further, even if the bottles did contain alcohol, it does not show that Ms. Bee consumed any alcohol that day.

Additionally, in the body camera footage depicting Det. Jones interviewing Ms. Bee, she did not appear to be intoxicated, nor did Det. Jones or Det. Ross testify that she had appeared intoxicated. Ms. Bee testified several times that she had not been drinking the day of the incident and C.B. testified that the bottles in the photograph had not contained alcohol. There is no evidence in the record that Ms. Bee was intoxicated or that she had been drinking when she observed Defendant expose his penis. We find that a DWI arrest two years later does not seriously cast doubt upon the credibility of her testimony.

Furthermore, Ms. Bee's trial testimony echoed the statement she provided Det. Jones the day of the incident, as seen on his body camera footage. Considering

Ms. Bee gave her statement to Det. Jones two years before she was arrested for DWI, and three years before she pled guilty, any alleged influence the State would have had over her trial testimony appears minimal. In addition, Ms. Bee's version of events was supported by C.B.'s account and their testimonies did not conflict. Accordingly, there is no indication that the State attempted to influence Ms. Bee to alter her testimony in any way.

Even if Defendant had provided persuasive evidence that Ms. Bee had been drinking at the party, there is no indication that her perception was altered at the time of the offense. Ms. Bee's account has remained consistent and was supported by C.B.'s description of events in both her forensic interview and trial testimony, upon which the court apparently relied upon in reaching its verdict. C.B.'s account provided details of Defendant's actions and insight into his state of mind on several occasions on the day of the offense, from which a rational fact finder could have concluded that the state proved the elements of attempted indecent behavior with a juvenile beyond a reasonable doubt.

Defendant has not shown that the State's failure to disclose Ms. Bee's DWI conviction that occurred three years after the offense was committed was material to Defendant's case or rendered his trial unfair, especially at a bench trial in which the trial court was informed of the conviction prior to reaching its verdict.[7] The motion for a new trial, the *Brady* claim, and La. C.Cr.P. art. 717, all require Defendant to show he was prejudiced by the State's failure to disclose the impeachment evidence before relief may be considered by the trial court.

---

[7] Under La. C.Cr.P. art. 851(B)(3), to obtain a new trial defendant must show, among other things, that he could not have discovered the evidence by his exercise of reasonable due diligence. The Orleans Parish Docket Master, which lists both magistrate and district court proceedings, is available online, and the traffic court is located mere steps from the criminal district court, thus Defendant could have arguably attained Ms. Bee's criminal history with little effort.

Defendant has not established that he was in fact prejudiced by the State's failure to disclose Ms. Bee's DWI conviction. The trial court did not abuse its discretion in denying Defendant's motion for a new trial. This assignment of error is meritless.

## CONCLUSION

For the foregoing reasons, we affirm the Defendant's conviction and find no error in the trial court's denial of Defendant's Motion for Judgment of Acquittal and Defendant's Motion for New Trial.

**AFFIRMED**